269 P.2d 751

**STATE v. RICE.**

No. 5735.

Supreme Court of New Mexico.

April 15, 1954.

Glenn G. Stiff, Roswell, for appellant.

Richard H. Robinson, Atty. Gen., William J. Torrington, Fred M. Standley, Asst. Atty. Gen., for appellee.

McGHEE, Chief Justice.

The defendant was convicted of the crime of manslaughter and sentenced to serve a term of years in the state penitentiary. Appeal is brought from such conviction, it being urged there was not sufficient evidence to warrant the submission of the case, upon two counts, to the jury.

These counts were that the defendant at the time of the automobile collision resulting in the death of Ruby M. Byrd was driving his automobile upon the wrong side of the highway when the same was not unobstructed for a distance of 500 feet, contrary to § 68–510, 1941 Comp., an unlawful act not amounting to a felony, and that the death of the said Ruby M. Byrd was caused by the reckless driving of the defendant, contrary to § 68–503, 1941 Comp., in failing to yield one-half of the highway to the oncoming car driven by the deceased, as required by § 68–511, 1941 Comp.

The accident occurred on December 25, 1951, at approximately 3:00 or 3:30 a. m., about eleven miles from Roswell, New Mexico, on Highway 70, northeast of Roswell in Chaves county. The defendant was the only eye-witness testifying concerning the accident. He testified he was travelling from Roswell to Bovina, Texas, to bring his aunt and uncle to Roswell for Christmas; that he first saw the Byrd car when it was five or six hundred yards away; that he could see its lights as it came over a hill; that at that time he was driving on his right side of the road, but that his car swerved and he thought his left front tire had blown out; that he attempted to get his car back on the right side of the road but was unsuccessful and his car struck the Byrd car head-on.

Floyd Fisher, a witness called by the state, discovered the accident. He testified

he came upon it shortly after 4 o'clock in the morning; that he was travelling northeast along said highway and that both cars involved in the wreck were located to the left of the centerline of the road, that is, the defendant's car was on its wrong side of the road; that the automobiles appeared to have collided head-on and were demolished; that the defendant was the only person in his car and that three persons had ridden in the Byrd automobile, the deceased, her husband and their small child. Fisher testified that upon his arrival the defendant was by his car near the back wheel on the left side; that the deceased was behind the steering wheel of the other car and her husband and child were out on the side.

The witness, Don Schultz, a New Mexico State Policeman, testified for the state. He was called to the scene of the accident between 4:00 and 5:00 o'clock, and upon arrival he found "a two-car accident, a head-on collision." He testified both automobiles were on the left-hand side of the road; that the defendant's car was on its left-hand side of the road headed northwest; that there was a painted center line approximately 100 yards behind the accident; that for approximately 600 yards where the road had recently been resurfaced, and including the place of collision, there was no painted center line, but that the line resumed beyond the crest of the hill; that the wheels of the defendant's car were within two or three inches of the far left-hand side of the road; that the weather was clear and the road, which was surfaced in asphalt paving, was dry; that there were no tire tracks or skid marks upon the highway; that the dimension of the highway where the accident occurred was 25 feet for the paved portion with 12-foot shoulders on each side; that he learned that Mrs. Byrd was driving just before the accident, while her husband was on the rear seat of the car sleeping, and their child was on the front seat with Mrs. Byrd. He stated the accident happened just on the hill crest and that there was very little vision ahead for cars travelling in a northeasterly direction because of the hill; that the hill was not too steep, but that it was so steep the other side could not be seen by cars ascending it; that the top of the hill was a flat surface.

Luis Sandoval, a witness for the state, testified he ran the tire department and recapping plant for a Roswell motor company; that he had been employed in that type of work for 30 years; that at the direction of his employer he removed a left-front casing from a 1939 Mercury, the make and model of the car driven by the defendant on the day of the fatal accident; that his examination of the tire revealed two beads or cables of the tire were broken and the tube inside the tire was ground up; that the wheel was bent and the cut marks on the casing where the cables were broken

corresponded with the marks on the wheel; that in his opinion the tire had been broken from being hit with some kind of hard object—not blown out from internal cause. Evidence to establish the tire had been blown out or that something had happened to it before the accident was introduced by the defendant and his witnesses.

Upon submission of this case to the jury full instructions were given upon the defendant's theory of the case, that a blowout of his tire or some other external force caused his car to swerve to the wrong side of the road. The jury was instructed if it found or had reasonable doubt that the defendant's automobile so swerved or was forced to the wrong side of the highway by such cause, it should find the defendant not guilty and acquit him. The jury rejected such theory by their verdict of guilty and no error is assigned in connection with any of the testimony or instructions treating of such matter.

The defendant's sole contention is that the mere happening of the accident and the circumstantial evidence that his automobile was on its wrong side of the highway at the crest of a hill afford insufficient basis to submit the case to the jury on either of the counts above described.

As the conviction in the present case must stand if there was sufficient evidence to take the case to the jury on either count, we will consider only the case as to the second count, that the defendant was guilty of reckless driving and that he failed to yield one-half of the travelled portion of the highway to the Byrd car and that such act caused the death of decedent.

(1) Our statute on manslaughter provides, § 41–2407, 1941 Comp.:

"'Manslaughter' defined—Voluntary and involuntary.—Manslaughter is the unlawful killing of a human being without malice. It is of two kinds: 1st. Voluntary: Upon a sudden quarrel or in the heat of passion. 2nd. Involuntary: In the commission of an unlawful act not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection. (Laws 1907, ch. 36, § 2; Code 1915, § 1460; C.S.1929, § 35–305.)"

The burden of proof on the part of the state to support such charge beyond a reasonable doubt is clearly established in New Mexico. State v. Harris, 1937, 41 N.M. 426, 70 P.2d 757, 758, and State v. Sisneros, 1938, 42 N.M. 500, 82 P.2d 274. In the first of these cases we quoted with approval the following language from People v. Allen, 321 Ill. 11, 20, 151 N.E. 676, 679:

"* * * 'This court has, in reviewing judgments for manslaughter where death was caused by alleged reckless driving of automobiles, laid down the rule that where the proof is

sufficient to establish, beyond a reasonable doubt, that under the circumstances of the injuries the conduct of the drivers of the machines was so reckless, wanton, and willful as to show an utter disregard for the safety of pedestrians, convictions for manslaughter will be warranted. These cases also recognize the rule that an injury caused by mere negligence, not amounting to a reckless, willful, and wanton disregard of consequences to others, cannot be made the basis of a criminal action.' "

In the Sisneros case, supra [42. N.M. 500, 82 P.2d 275], it was ruled, as stated in syllabus 14 in the report of such case:

"The statute authorizing conviction of involuntary manslaughter where death of a party is caused by the accused without malice in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection, contemplates criminal negligence." (Comp.St.1929, § 35–305, our present § 41–2407, 1941 Comp., supra.)

Most recently, in State v. Clarkson; 1954, 58 N.M. 56, 265 P.2d 670, 672, we said:

"The wanton and reckless operation of an automobile which must be shown as the proximate cause of a death in order to secure a conviction for involuntary manslaughter where a human is killed by an automobile being driven by another is not different from that required to be shown under our guest statute § 68–1001, 1941 Compilation, before one injured may recover against his host driving the car. * * * "

The instant case appears to be somewhat unusual because the circumstance of defendant's car being entirely on the wrong side of the road upon a hill where the view was obstructed is all that may be relied upon to support the conviction. Numerous decisions, annotations and texts cited by counsel in this case and discovered upon research by the Court have been studied. As there are, of course, multitudes of decided cases bearing on the general issue here, and as most of them are considerably limited in their force by varieties of statutory enactments, reference is here made only to pertinent textual treatment and annotations. 99 A.L.R. 756, 136 A.L.R. 1256 and 1270, 161 A.L.R. 10, 8 Blashfield, Cyc. of Automobile Law and Practice (Perm. Ed.) §§ 5490, 5491. The general pattern of most of the cases involves the incident of a defendant's automobile being on the wrong side of the road in combination with defendant's intoxication, driving at an unlawful speed, or the added factors of his having clear vision of an approaching car in time to avoid a collision, or his conscious refusal to follow the cautions of passengers riding with him. In the case before us a count involving a charge of driving while under the

influence of intoxicating liquors was, on defendant's motion, withdrawn from the consideration of the jury.

Nevertheless, in our judgment, the unexplained presence of the defendant's car on the wrong side of the highway at the crest of the hill must have either been the result of deliberate action or inadvertence, the jury having rejected the defendant's testimony as to a blown-out tire. While it is true that under certain circumstances inadvertently allowing an automobile to encroach upon the wrong side of the road will not support conviction for manslaughter if one be killed as a result thereof, yet such inadvertence while going up an incline so steep cars beyond its crest may not be seen constitutes a reckless, willful and wanton disregard of consequences to others.

The rule is well stated in Potter v. State, 1939, 174 Tenn. 118, 124 S.W.2d 232, 236:

"* * * It is a matter of common knowledge that drivers frequently violate the rule which requires that a car be driven altogether on its right side of the center of the road unintentionally and without any realization at the moment of the exact position of the wheels of the vehicle. It is frequently a matter of in-attention and oversight, and there is no proof here satisfactory to this Court, even conceding that the defendant's car was over the center line at the moment of the impact, that he was intentionally or consciously so driving. An essential element of criminal liability is thus lacking. * * * The test appears to be whether or not the driver, violating the highway statute in the particular above considered, does so consciously, or under circumstances which would charge a reasonably prudent person with appreciation of the fact and the anticipation of consequences injurious or fatal to others. For example, one who drives over the crest of a hill on the wrong side of the road, or who drives out from behind a line of congested traffic into the face of near approaching vehicles * * * can hardly be acquitted of criminal negligence on his plea of inadvertence. The demand for diligence and caution is too imperative under such conditions to be so excused. * * * *"

See also, People v. Collins, 1925, 195 Cal. 325, 233 P. 97; People v. Von Eckartsberg, 1933, 133 Cal.App. 1, 23 P.2d 819; People v. Marconi, 1931, 118 Cal.App. 683, 5 P.2d 974; Peoples v. Commonwealth, 1950, 313 Ky. 618, 233 S.W.2d 265; State v. Stansell, 1932, 203 N.C. 69, 164 S.E. 580; and State v. Riddle, 1948, 112 Utah 356, 188 P.2d 449.

■■ While it is true where the state relies solely upon circumstantial evidence to prove its case, such evidence must be in-

consistent with any reasonable hypothesis of the defendant's innocence, Territory v. Lermo, 1896, 8 N.M. 566, 46 P. 16, as cited by defendant, the evidence in the present case meets such test.

The judgment and sentence will be affirmed, and it is so ordered.

COMPTON, LUJAN and SEYMOUR, JJ., concur.

SADLER, J., not participating.