323 P.2d 1096

STATE of New Mexico, Plaintiff-Appellee,

v.

Richard Melvin TRACY, Defendant-Appellant.

No. 6344.

Supreme Court of New Mexico.

April 10, 1958.

56

James L. Briscoe, Tucumcari, for appellant.

Fred M. Standley, Atty. Gen., Hilton A. Dickson, Jr., Asst. Atty. Gen., Fred M. Calkins, Jr., Asst. Atty. Gen., for appellee.

PER CURIAM.

This case arises from a head-on collision of two automobiles occurring on Highway 66 in Quay County, New Mexico. The appellant, Richard Melvin Tracy, was tried upon the charge of negligent homicide as provided in § 64–22–1, N.M.S.A. 1953. This statute was repealed by Chapter 239 of the 1957 Session Laws of New Mexico, but of course this prosecution was not abated because of such repeal. Art. 4, Sec. 33, New Mexico Constitution.

Appellant was driving a 1949 Chrysler automobile in an easterly direction upon Highway 66 in Quay County, New Mexico, on the night of January 15, 1957, while the car he struck was traveling in a westerly direction. Riding with him as a passenger was one Luther Brogdon, a hitch-hiker. Appellant undertook to pass a truck which was traveling on the highway in the same direction and ahead of his car. With this intention, he moved his car across and into the lane on the north side of the highway, which was the one oncoming cars would use, and where the cars collided.

Riding with the deceased in the front seat was a woman, Euladine M. Jones, while two other passengers were in the rear seat. Appellant and his passenger were

injured, as were the occupants of the rear seat of the deceased's car. Miller, the driver, and Euladine M. Jones were killed. Prosecution on the charge of negligent homicide was based on the death of Dale W. Miller.

The basis of this appeal is that there was no substantial evidence, in fact, no evidence at all, of criminal negligence on the part of the defendant. Appellant made motions to dismiss at the close of the state's case and, also, at the close of the defendant's case. A motion for judgment non obstante veredicto was also made. The trial court denied all of these motions.

The material part of the statute with which we are concerned reads, as follows:

> "When the death of any person ensues within 1 year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the rights or safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

It will be noted at once that the degree of negligence required under the statute is something more than ordinary negligence, being the operation of a vehicle in reckless disregard of the rights or safety of others. We now consider the record to determine whether there is sufficient substantial evidence of such negligence to support the verdict. . . . . .

As above stated, the collision took place in the westbound lane. At the point of impact there was, in the eastbound lane, a yellow line which indicated that the passing of vehicles was not permitted at that place. A survey showed that the yellow or no-passing line was 810 feet long. Appellant's skid mark was 208 feet long in the west bound lane. The collision took place at a point shortly before the yellow line ended, indicating either that the appellant had traveled its length on the wrong side of the road, or that he had crossed the no-passing line at least 208 feet before it had ended.

Appellant told investigating officers that he had not seen the yellow line and did not know that he was in a no-passing zone. He testified that because of the lights of the approaching car of the deceased he was unable to see the yellow line. He also stated that as he drove behind the truck which he later attempted to pass, "there was a hesitation there and doubt as to whether or not I could pass or not." Again, appellant stated, " * * * I think I could have passed this truck if it hadn't of speeded up, there would have been a possible chance of going ahead and passing this truck and being safe." What appellant is saying is that even if the truck had not increased its speed when appellant was attempting to pass it there was only the possible chance of passing it safely.

Appellant stated that when he became aware of his inability to pass the truck in the face of the deceased's oncoming car, he applied the brakes on his car, then stepped on the accelerator in an attempt to get off on the left side of the road. The evidence indicated, however, that one tire on appellant's car left a skid mark two hundred and eight feet in length and directly up to the point of impact, indicating that no attempt was made to accelerate the Chrysler to the left shoulder of the road at any time.

The condition of the highway on the night of the accident was dry and the weather was clear. Beyond the end of the yellow line the roadway dropped sharply. One approaching from the west would be unable to see any car coming up the incline from the east. Because of this condition there was a yellow line in the approaching lane on either side of the crest of the incline.

Much the same fact situation was involved in State v. Rice, 58 N.M. 205, 269 P.2d 751, 753. There, the appellant was driving on the wrong side of the highway when he drove into an oncoming car causing the death of the driver. There was no prohibition against passing at the point of that accident.

In affirming the appellant's conviction of manslaughter, the court stated:

"While it is true that under certain circumstances inadvertently allowing an automobile to encroach upon the wrong side of the road will not support conviction for manslaughter if one be killed as a result thereof, yet such inadvertence while going up an incline so steep cars beyond its crest may not be seen constitutes a reckless, willful and wanton disregard of the consequences to others."

The fact situation in the instant case, while similar, goes beyond that involved in State v. Rice. Appellant crossed a yellow no-passing line while attempting to pass a truck at the crest of an incline and he saw the lights of the approaching car of the deceased. There was hesitation and doubt in his mind before he started to pass, and by his own testimony, had the truck not increased its speed there would have been only the possible chance of passing safely.

The sum total constitutes substantial evidence upon which the verdict of the lower court could be based, and substantial evidence of "reckless disregard of the rights or safety of others." The verdict of the lower court should be affirmed.

It is so ordered.

LUJAN, C. J., and SADLER, Mc-GHEE, and COMPTON, JJ., concur.

SHILLINGLAW, J., not participating.