593 P.2d 755

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Jerrel W. PENDLEY, Defendant-Appellant.**

**No. 3736.**

Court of Appeals of New Mexico.

March 22, 1979.

Tom Cherryhomes, Carlsbad, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Sammy J. Quintana, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant appeals his conviction of aggravated battery. Section 30–3–5(C), N.M. S.A.1978. We (1) answer four contentions summarily and discuss (2) verdict of an eleven-person jury, and (3) deferred sentence under the firearm enhancement statute.

An office party, followed by a party at the country club, continued at defendant's residence. Defendant went upstairs to use the bathroom, then rested on a bed. Defendant's wife found him, inquired if he was all right and kissed him. As the door closed upon his wife leaving the bedroom, defendant heard the victim say, " 'why don't you kiss me the way you did Jerry [defendant]' ". Defendant got up and, as he opened the door, he saw the victim push defendant's wife against the wall of the stairs " 'and start pawing and trying to kiss her.' "

The victim refused to accede to several requests to leave. Defendant "knocked me [his wife] to the bedroom". Defendant

went downstairs, got a pistol and told the victim " 'you will leave now. Again he refused and started toward me.' "

The evidence is conflicting as to whether the victim was shot before there was a struggle for the pistol, or was shot while defendant and the victim were struggling for the pistol. Defendant testified that he got the pistol in order to force the victim from defendant's house since the victim had refused to leave. Defendant also testified that the victim never threatened defendant and never threatened defendant's wife "other than when he pushed her up against the stairway" and "he tried to kiss her".

## Contentions Answered Summarily

(a) The information charged the defendant applied force to the victim "with a deadly weapon, to-wit: a gun . . . contrary to Section 40A–3–5C & 40A–29–3.-1, NMSA, 1953." Section 40A–29–3.1, supra, was the firearm enhancement statute; it is now compiled as § 31–18–4, N.M.S.A. 1978.

■ Defendant objected to the submission of an interrogatory to the jury as to whether a firearm was used, claiming that the information did not give him notice that the State sought enhancement of any sentence because a firearm was used. Defendant's claim, which is frivolous, is that the information did not use the word "firearm" and that "gun" is not included in the statutory definition of "deadly weapon", see § 30–1–12(B), N.M.S.A.1978. Defendant was specifically charged with violating the firearm enhancement statute. This, in itself, was sufficient notice. Defendant was also charged with use of a deadly weapon, a gun, in committing the crime. This, in itself, was also sufficient notice. If defendant was uncertain whether the gun was a firearm he could have obtained a description of the weapon under Rules of Crim. Proc. 8 and 9. *State v. Barreras*, 88 N.M. 52, 536 P.2d 1108 (Ct.App.1975).

■ (b) Defendant requested an instruction to the effect that defendant shot the victim "while attempting to prevent an as-

sault with intent to commit a violent felony in his home." The requested instruction stated that this defense was available if, among other requirements, it appeared to defendant that commission of this assault "was close at hand". The asserted justification for this requested instruction was the evidence that the victim attempted to kiss defendant's wife. That incident was not "close at hand", it was over. Defendant had interrupted the victim, and knocked his wife into the bedroom, before going downstairs for the pistol. We do not consider the legal correctness of the requested instruction. The instruction was properly refused because the evidence did not support the instruction.

■ (c) Defendant's requested instruction, to the effect that he shot the victim in defense of his wife, was also properly refused. The evidence did not support the requested instruction, which would have required defending his wife "from an attack". Defendant had "defended" his wife, by knocking her into the bedroom, before he went after his pistol.

■ (d) Defendant also requested an instruction on his "right of self-defense". This request was properly refused because there was no evidence that defendant used the gun in self-defense. The evidence most favorable to defendant is that the victim tried to get the gun away from defendant. Self-defense was not involved in this struggle because the victim was only after the gun, the victim never threatened defendant.

## Verdict of an Eleven-Person Jury

Twelve jurors were chosen, but no alternate. At the close of the State's case, one of the jurors became ill and could not continue to serve in the case. The trial court stated it would declare a mistrial unless both the State and defendant consented to the matter being submitted to a jury of eleven persons.

The State consented, defendant's counsel consented and defendant consented. The trial court questioned defendant as to his knowledge of his right to have the matter

decided by a twelve-person jury, that if defendant "prefer to have it tried by twelve people rather than eleven . ' . . you have that right."

> THE COURT: And, do you concur with Counsel that you are agreeable to letting a jury of eleven decide the issues in this case as opposed to a jury of twelve?
>
> MR. PENDLEY: Yes, sir.

■ Defendant contends the trial court erred in failing to declare a mistrial; that the right to a twelve-person jury cannot be waived. Such a view, expressed in *Territory v. Ortiz*, 8 N.M. 154, 42 P. 87 (1895) was overruled in *State v. Hernandez*, 46 N.M. 134, 123 P.2d 387 (1942).

■ Next, defendant claims that he could not consent to being tried by an eleven-person jury. *State v. Hernandez*, supra, is to the contrary.

Next, defendant asserts his waiver was not effective because not in writing. He relies on Rule of Crim.Proc. 38(a) which states: "Criminal cases required to be tried by jury shall be so tried unless the defendant, in writing, waives a jury trial with the approval of the court and the consent of the state." This requirement, of a written waiver, avoids ambiguities if the right to a jury is waived prior to trial. We doubt that the written waiver requirement was intended to apply to the situation in this case.

■ Assuming that the written waiver requirement was applicable, we note that defendant did not claim, in his motion for a new trial, that his waiver of a twelve-person jury was ineffective because not in writing. His claim, that a written waiver was required, is asserted for the first time on appeal. The claim is not entitled to appellate review because the claim that the waiver be in writing is not a question which can be raised for the first time on appeal. See N.M.Crim.App. 308.

■ There is another reason why this assertion is without merit. Still assuming that the written waiver requirement of Rule of Crim.Proc. 38(a) was applicable, this requirement could be waived. *Baird v.*

*State*, 90 N.M. 667, 568 P.2d 193 (1977). The specific agreements of defendant and his counsel, that the trial proceed with eleven jurors, waived the requirement that the waiver be in writing.

■ Defendant also contends that the trial court erred in inquiring about an eleven-person jury in the presence of the jury. Since defendant was agreeable to proceeding with eleven jurors, he could not have been hurt by expressing his agreement in the presence of the jurors.

*Deferred Sentence Under the Firearm Enhancement Statute*

At sentencing, the trial court was asked "to consider a deferred sentence and impose a strict condition of probation." The trial court pointed out that the statute prohibited suspension of the first year of the sentence, but there was no express prohibition against a deferred sentence in this portion of the statute. The trial court stated:

> [T]he Statute intended anyone convicted of the offense that involves a firearm, spend at least one year in the State Penitentiary. With the Court feeling that that was the intent of the legislature, I'm going to impose the minimum sentence that I feel that I can impose under the Statute.

The question is whether the trial court could have deferred defendant's sentence.

■ The trial court has general authority to suspend or defer sentences. Section 31–20–3, N.M.S.A.1978. However, the sentence enhancement provisions for use of a firearm are mandatory. *State v. Kendall*, 90 N.M. 236, 561 P.2d 935 (Ct.App.1977), rev'd on other grounds, 90 N.M. 191, 561 P.2d 464 (1977). How do the mandatory enhancement provisions of § 31–18–4, supra, affect the trial court's general authority to defer or suspend sentence?

The applicable portion of § 31–18–4, supra, reads:

> A. When a separate finding of fact by the court or jury shows that a firearm was used in the commission of:

(1) any felony except a capital felony, the minimum and maximum terms of imprisonment prescribed by the Criminal Code shall each be increased by five years; and

(2) for any crime constituting a felony other than a capital felony, the court shall not suspend the first one year of any sentence imposed.

B. For a second and subsequent felonies other than a capital felony in which a firearm is used, the minimum and maximum terms of imprisonment prescribed by the Criminal Code shall be increased by five years and the court shall not suspend or defer all or any part of the sentence nor shall parole be considered unless the minimum sentence has been served.

■ Under paragraph A(2), the trial court may not suspend the first year of the sentence for a first felony. There is no prohibition against deferring the sentence for the first felony. Under paragraph B, "the court shall not suspend or defer all or any part of the sentence" for second or subsequent felonies. As worded, § 31–18–4, supra, did not bar the trial court from deferring defendant's sentence, if in fact, this conviction was defendant's first felony.

■ Did the Legislature intend to prohibit deferring the sentence for a first felony conviction when a firearm was used? Legislative intent is to be determined primarily from the language used in the statute; we look first to the words used. State v. McHorse, 85 N.M. 753, 517 P.2d 75 (Ct. App.1973). Under this primary approach, the trial court's authority to defer sentence for a first felony was not affected; § 31–18–4(A)(2), supra, does not mention a deferred sentence.

The State argues:

Since the legislature intended that a person who used a firearm in the commission of a felony cannot have one year of his sentence suspended, it only stands to reason that they [sic] certainly did not intend for a less punitive measure; deferment, to be applicable. Having created this statute, the courts cannot now alter the

criminal penalties set forth by the legislature. The establishment of criminal penalties is a legislative function.

■ We agree that it is for the Legislature to establish criminal penalties; however, the wording enacted by the Legislature did not bar deferment of sentence for a first felony where a firearm was used. It does not "stand to reason" that the Legislature intended such a bar because a reference to a deferred sentence was omitted from § 31–18–4(A)(2), supra, when such a reference was included in § 31–18–4(B), supra.

The State also argues that it would be "absurd to think that the legislature intended to allow deferment of a sentence" under § 31–18–4(A)(2), supra, for a first felony offender. In support of this argument the State refers us to Laws 1977, ch. 216, § 5 (appearing in the compiler's note to § 31–18–1, N.M.S.A.1978). That provision, not in effect prior to July 1, 1979, makes various changes in the law concerning use of deadly weapons, as opposed to firearms only, and does bar deferral of sentences. We must presume that the Legislature was informed as to existing law when it enacted the 1977 statute. State v. Trujillo, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973). Being informed as to existing law when it enacted a law in 1977 to become effective July 1, 1979, the 1977 law shows a legislative intent to change the existing law. The result is that the Legislature recognized that § 31–18–4(A)(2), supra, did not apply to deferred sentences. See State v. Cutnose, 87 N.M. 300, 532 P.2d 889 (Ct.App.1975).

■ In essence, the State is arguing that we should add words omitted by the Legislature; that although the Legislature omitted deferred sentences from § 31–18–4(A)(2), supra, we should add "or defer" after "suspend" in that provision. We are not to "add words in the construction of a statute, except where it is necessary to do so to make the statute conform to the obvious intent of the Legislature, or to prevent absurdity." State v. Ortiz, 78 N.M. 507, 433 P.2d 92 (Ct.App.1967). Compare State v.

*Herrera,* 86 N.M. 224, 522 P.2d 76 (1974). This rule applies when the statute must be construed in order to ascertain the legislative intent. Where the meaning of the statutory language is plain, there is no room for construction. *State v. McHorse,* supra; *State v. Ortiz,* supra. Here the words used by the Legislature are free from ambiguity; deferred sentences were omitted from § 31–18–4(A)(2), supra. There is no basis for construction; no basis for adding words to the statute. There is no obvious legislative intent to include deferred sentences in § 31–18–4(A)(2), supra. The result is not absurd because the use or nonuse of a deferred sentence was still within the trial court's discretion.

Having misunderstood the meaning of § 31–18–4(A)(2), supra, and desiring to impose the minimum sentence, the trial court did not consider whether defendant's sentence should be deferred. In this, the trial court erred.

Defendant's conviction is affirmed. The cause is remanded for a further sentencing hearing in accordance with this opinion. *Compare State v. Barreras,* supra.

IT IS SO ORDERED.

HENDLEY and WALTERS, JJ., concur.