622 P.2d 254

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Jerry BARELA, Defendant-Appellant.**

**No. 4192.**

Court of Appeals of New Mexico.

July 1, 1980.

Writ Quashed Jan. 19, 1981.

William Lazar, El Rito, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Sammy Lawrence Pacheco, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

ANDREWS, Judge.

Defendant was convicted of homicide by vehicle by reckless driving. Sections 66–8–101 and 66–8–113, N.M.S.A.1978. He requested instructions on an asserted lesser included offense, which were refused. He claims the refusal was error. The refused instructions were to the effect that homicide by vehicle could be committed by a killing while unlawfully operating a vehicle. Defendant's position is that any killing by unlawful operation of a vehicle is covered by § 66–8–101, that under § 66–8–101(A), the offense is a misdemeanor, that only under the two specific provisions of § 66–8–101(B), is the offense a felony. Defendant's contention is that a killing under § 66–8–101(A), is a lesser offense included within § 66–8–101(B), and for this reason his requested instructions were erroneously refused. The literal wording of § 66–8–101, and legislative history support defendant's argument.

We hold that the legislative intent and relevant case law supports the defendant's contention. Thus, the requested instructions should not have been refused.

The homicide by vehicle statute is part of the Motor Vehicle Code enacted in 1978. Section 66–1–1, N.M.S.A.1978. Section 66–8–101, reads:

A. Homicide by vehicle is the killing of a human being in the unlawful operation of a motor vehicle.

B. Any person who commits homicide by vehicle while violating Section 66–8–102 or 66–8–113 NMSA 1978 is guilty of a felony.

Pertinent to defendant's contentions are two penalty provisions, §§ 66–8–7 and 66–8–9, N.M.S.A.1978. They read:

*66–8–7. Penalty for misdemeanor.*

A. It is a misdemeanor for any person to violate any provision of the Motor Vehicle Code [66–1–1 to 66–8–140 NMSA 1978] unless the violation is declared a felony.

B. Unless another penalty is specified in the Motor Vehicle Code, every person convicted of a misdemeanor for violation of any provision of the Motor Vehicle Code shall be punished by a fine of not more than one hundred dollars ($100) or by imprisonment for not more than ninety days, or both.

*66–8–9. Penalty for felony.*

Any person convicted of violating any provision of the Motor Vehicle Code [66–1–1 to 66–8–140 NMSA 1978] declared a felony, and punishment is not specified, shall be punished by imprisonment for not less than one year nor more than five years or by a fine of not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000) or both.

Read literally, § 66–8–101(A), defines the crime of homicide by vehicle to include any killing of a human being in the unlawful

operation of a motor vehicle. Read literally, only killings involving a violation of either § 66–8–102 or § 66–8–113, N.M.S.A. (1978) are declared to be felonies, with punishment under § 66–8–9. Other killings not declared to be felonies, are misdemeanors, see § 66–8–7(A), with punishment under § 66–8–7(B).

*Legislative History*

Two comprehensive laws pertaining to motor vehicles were enacted in 1953.

Generally speaking, Laws 1953, ch. 138 enacted the Uniform Motor-Vehicle Administration, Certificate of Title, and Anti-Theft Act. See Laws 1953, ch. 138, § 119. Sections 114 and 115 of Chapter 138 were penalty provisions. The substantive portions of §§ 114 and 115 were the source of the penalties now appearing in §§ 66–8–7 and 66–8–9, supra. Laws 1953, ch. 138 had nothing to do with a killing by vehicle and the penalty provisions of that law were not applicable to a vehicular killing.

Generally speaking, Laws 1953, ch. 139 enacted the Uniform Act Regulating Traffic on Highways. See Laws 1953, ch. 139, § 193. Section 53 of Chapter 139 set forth the offense of negligent homicide in terms of death caused by driving in reckless disregard of the rights of others. Section 53 stated its own penalty, a penalty greater than the general penalty for misdemeanors set forth in § 181 of Chapter 139. Section 53 of Chapter 139 was repealed by Laws 1957, ch. 239. With this repeal in 1957, there was no special law applying to vehicular killing; after the repeal, a vehicular killing would be prosecuted under the general homicide laws. *See State v. Deming,* 66 N.M. 175, 344 P.2d 481, 77 A.L.R.2d 964 (1959).

The provisions of Laws 1953, chs. 138 and 139, together with other motor vehicle provisions, were compiled in 1953 N.M.S.A. as Chapter 64, Articles 1 through 23. Laws 1961, ch. 213, § 1 declared that these portions of the 1953 compilation could be cited as the "Motor Vehicle Code". Although the two 1953 laws were compiled in the "Code", Laws 1961, ch. 213 § 1 left intact the separate penalty provisions of the two 1953

laws. However, Laws 1961, ch. 185 stated penalties for "Motor Vehicle Code" misdemeanors and felonies in language identical to §§ 66–8–7 and 66–8–9, supra. Laws 1961, ch. 185 also repealed the separate penalty provisions of the two 1953 laws. Thus, after the 1961 legislation, there was one general penalty provision for misdemeanors and one general penalty provision for felonies under the "Motor Vehicle Code."

Laws 1969, ch. 138 enacted the homicide by vehicle statute. Its substantive language was identical to the language of § 66–8–101. The statute was enacted as "a new Section 64–22–1, N.M.S.A. 1953". By this language, the homicide by vehicle statute was enacted as a part of the "Motor Vehicle Code" to which the general penalty provisions for misdemeanors and felonies applied.

Both the homicide by vehicle statute and the general penalty provisions of the "Motor Vehicle Code" were repealed by Laws 1978, ch. 35, and a new Motor Vehicle Code was enacted. This new Code enacted §§ 66–8–7, 66–8–9 and 66–8–101, as quoted in this opinion. The relationship between the homicide by vehicle provision and the penalty provisions was not changed by the 1978 enactment. The literal reading of these statutes, which supports defendant's position, has existed since 1969. The lack of legislative change in the 1978 law further supports defendant's argument. *See State v. Thompson,* 37 N.M. 229, 20 P.2d 1030 (1933).

Is there a lesser included offense of homicide by vehicle by careless driving? If so, it has not been declared to be a felony and, thus, is a misdemeanor under § 66–8–7, *supra.* The maximum penalty for such a killing by careless driving would be no more than the maximum penalty for careless driving without a killing. It may be argued that the Legislature could not have intended that a killing by careless driving would have such a penalty consequence, and that to avoid an absurd result, we should hold that the Legislature had no intent that there be lesser included offenses included

within the offense of homicide by vehicle. We cannot agree with this proposition.

There are degrees in our "Homicide by Vehicle" statute. Defendant was entitled to instructions on the unlawful operation of his vehicle other than reckless driving.[1] If the defendant is convicted of homicide due to reckless driving, it is a felony. It is undisputed that defendant drove his car left of the center lane when the accident occurred. If the defendant is convicted of homicide by reason of driving on the wrong side of the road it is a misdemeanor.

■ A "lesser included offense" is one which is one composed of some, but not all, elements of a greater offense and which does not have any element not included in the greater offense so that it is impossible to commit the greater offense without necessarily committing the lesser offense. *See* R.Crim.Proc. 44(d); *State v. Patterson*, 90 N.M. 735, 568 P.2d 261 (Ct.App.1977); *State v. Kraul*, 90 N.M. 314, 563 P.2d 108 (Ct.App. 1977); *State v. Medina*, 87 N.M. 394, 534 P.2d 486 (Ct.App.1975).

In the instant case, the greater offense is homicide by vehicle, the killing of a human being in the unlawful operation of a motor vehicle. Unlawful operation exists by way of reckless driving, driving under the influence of intoxicating liquor, speeding, driving on the wrong side of the road and careless driving. All of these elements of these methods of operation are included in the greater offense. These unlawful operations have no element not included in the greater offense.

The State charged that defendant did: operate a motor vehicle in a reckless manner ... *and while doing so did unlawfully kill Edgar D. Moates ....* (Emphasis added.)

Under this charge, the defendant could operate his motor vehicle in a reckless manner. But if it was not this conduct that unlawfully killed the victim, defendant would be guilty of reckless driving and not homicide by vehicle. The same result would occur if defendant was unlawfully operating his car in any of the "unlawful" methods set forth above.

■ The failure to instruct on a lesser included offense is reversible error where there is *some evidence to establish the less*er offense. *State v. Wingate*, 87 N.M. 397, 534 P.2d 776 (Ct.App.1975). There is some evidence to this effect from the testimony of defendant and an accident analyst.

This case is reversed and defendant granted a new trial.

IT IS SO ORDERED.

WOOD, C. J., dissenting.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

I concur.

In *State v. Trujillo*, 85 N.M. 208, 213, 510 P.2d 1079 (Ct.App.1973), Judge Wood said:

Our "homicide by vehicle" statute has no degrees. . . .

In the instant case, Judge Wood's dissent says:

Compare *State v. Trujillo*, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973).

The comparison shows a difference in the form of the requested jury instruction. In *Trujillo*, defendant sought "driving while under the influence of intoxicating liquor" as a lesser included offense. In the instant case, defendant sought an instruction on "homicide by vehicle while unlawfully operating a motor vehicle." If the "Homicide by vehicles" statute has no degrees, Judge Wood's dissenting opinion in the instant case should read:

I dissent, *State v. Trujillo, supra. Trujillo* should be overruled

Judge Wood reads Section 66–8–101 to read as one criminal offense, paraphrased as follows:

Homicide by killing is the killing of a human being in the unlawful operation of a motor vehicle either by way of reckless driving or driving while under the influence of intoxicating liquor or drugs. Any

---

1. *Cf., State v. Trujillo*, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973).

person who violates this law is guilty of a felony.

Vehicular killings other than as specified are governed by our general homicide laws.

By this interpretation, a misdemeanor is eliminated from the offense of "Homicide by vehicles."

The only comparable homicide law is involuntary manslaughter. Section 30–2–3(B), N.M.S.A.1978. It reads in pertinent part:

Involuntary manslaughter consists of manslaughter committed in the commission of an unlawful act not amounting to felony . . . .

Defendant could have been prosecuted under this statute and received the same penalty without any legal problem. *State v. Deming*, 66 N.M. 175, 344 P.2d 481 (1959). As now construed, every criminal offense stated under "Homicide by vehicles" can be prosecuted under involuntary manslaughter. These statutes are of the same subject matter and penalty. Involuntary manslaughter is much more broad than "Homicide by vehicles." But neither statute is controlling and defendant could be prosecuted under either statute. Was this the intention of the legislature? It was not so referenced in the "Homicide by vehicles" statute.

What, then, is the purpose of having two statutes, one of which is included in the other? "The purpose of the 'pari materia' rule is to ascertain and carry into effect the legislatures' intention. *Dupont et al. v. Mills et al.*, 9 W.W.Harr. (Del.) 42, 196 A. 168, 119 A.L.R. 174." *State v. Chavez*, 77 N.M. 79, 419 P.2d 456 (1966). But *Dupont* says that the rule is applicable only when the terms of the statute to be construed are ambiguous or of doubtful significance. The "Homicide by vehicles" statute is neither. Why, then, construe the "Homicide by vehicles" statute to be one that falls within the realm of involuntary manslaughter? Surely, the legislature did not intend this absurd result.

Judge Wood says that to hold "the killing of a human being in the unlawful operation of a motor vehicle" to be a misdemeanor is an absurd result because the penalty is light. Assming this to be true for the moment, we have two absurd results, both of which are created, not by the legislature, but by judicial construction. We should not seek two absurd results. We should seek one rational result.

In *State v. Pendley*, 92 N.M. 658, 593 P.2d 755 (Ct.App.1979), Judge Wood said it is for the legislature to establish criminal penalties, not the courts; that we look to the language of the statute to determine what crime has been defined and what criminal penalty has been established; that if the legislature is informed of existing law and enacts another, it shows a legislative intent to change the existing law; that when the meaning of the statutory language is plain, there is no room for construction.

A year later, Judge Wood relies on *Ex Parte DeVore*, 18 N.M. 246, 136 P. 47 (1913). *DeVore* is applicable whenever the meaning of a word in a statute is necessary to reach a healthy result. It is not applicable to determine whether a misdemeanor leads to an absurd result. If the *Pendley* rules are healthy, we should not avoid them. The *Pendley* rules are applicable in the instant case.

If the legislature is satisfied with the misdemeanor penalty it is not the duty of this Court to put on a legislative robe and eliminate it. This duty rests with the legislature. It is our duty to reasonably construe "Homicide by vehicles" to protect persons charged with a violation thereof.

In Arkansas, negligent homicide by motor vehicle is a lesser degree of the offense of involuntary manslaughter, § 75–1001, 6B Arkansas Statutes Ann.1947 (1979 Replacement) and is a class A misdemeanor. Section 75–1055. Reckless driving is a lesser degree of the offense of negligent homicide. *Bentley v. State*, 252 Ark. 642, 480 S.W.2d 346 (1972).

California has a misdemeanor-manslaughter statute which involves the driving of a vehicle. Section 192, subsection (3) and Section 193; *People v. Glass*, 266 Cal.App.2d 222, 71 Cal.Rptr. 858 (1968).

Public policy favors an interpretation of the "Homicide by vehicles" statute which supports a lesser included offense. The word "homicide" means "The killing of any human creature." Black's Law Dictionary, p. 867 (Rev. 4th Ed.1968); 40 C.J.S. *Homicide* § 1 (1944). The term "homicide" is neutral. While it describes the act, it pronounces no judgment on its moral or legal quality.

Homicide may or may not be felonious. *People v. Andrus*, 331 Mich. 535, 50 N.W.2d 310 (1951). In its ordinary meaning, an intention to kill is not essential. There are accidental homicides. *United Life & Accident Ins. Co. v. Prostic*, 169 Md. 535, 182 A. 421 (1936).

Criminal intent, a mental state of conscious wrongdoing, is a necessary element in the crime of homicide by vehicle. The violation of a traffic code is not, in and of itself, sufficient to support a conviction. *State v. Jordan*, 83 N.M. 571, 494 P.2d 984 (Ct.App.1972); *State v. Dutchover*, 85 N.M. 72, 509 P.2d 264 (Ct.App.1973). In other words, the driver of a motor vehicle may unlawfully kill a person, yet, absent "conscious wrongdoing" is not guilty of homicide by vehicle. The driver is guilty of a misdemeanor. To distinguish between "unlawful operation" and "conscious wrongdoing" in the operation of a motor vehicle involves variable shades of conduct. The common and ordinary factor in a collision is a violation of the traffic code—a misdemeanor.

When the evidence presented to a jury creates a reasonable doubt as to the "conscious wrongdoing" of a driver, the jury should have the right to reduce the degree of the offense to an unlawful traffic violation. The driver of the vehicle is entitled to this protection. The legislature intended the distinctive result. It was so declared in the statute.

As a dangerous instrumentality, the motor vehicle takes human life discriminatorily by the conscious wrongdoer not the traffic violator. The former deserves a heavier penalty than the latter.

WOOD, Chief Judge (dissenting).

The majority have adopted my view, and language, that the literal wording of § 66–8–101, N.M.S.A.1978, and the legislative history, support defendant's argument that the offense of homicide by vehicle has lesser included offenses. The consequence of defendant's position is that all vehicular killings are misdemeanors unless the killing results from driving under the influence of intoxicating liquor, or a drug, or reckless driving.

The majority disagree with my view that (1) defendant's argument should be rejected because the result is absurd; (2) the legislative intent was contrary to defendant's contention; (3) § 66–8–101, supra, applies *only* to vehicular killings in the manner specified in § 66–8–101(B), supra; and (4) vehicular killings other than as specified in § 66–8–101(B), supra, are governed by our general homicide laws. Accordingly, I dissent.

The power to define crimes and to establish criminal penalties are legislative functions. *State v. Pendley*, 92 N.M. 658, 593 P.2d 755 (Ct.App.1979); *State v. Moss*, 83 N.M. 42, 487 P.2d 1347 (Ct.App.1971). In determining what crime has been defined and what criminal penalty has been established, we look to the language of the statute. *State v. Pendley*, supra. Where, however, adherence to the strict language of the statute "would lead to injustice, absurdity or contradictions, the duty devolves upon the Court of ascertaining the true meaning.... And it is a well settled rule, in the construction of a statute, that the spirit or reason of the law will prevail over its letter, especially where the literal meaning is absurd ...." *Ex Parte DeVore*, 18 N.M. 246, 136 P. 47 (1913). "An interpretation of a statute will never be adopted which will render the application thereof absurd or unreasonable." *Montoya v. McManus*, 68 N.M. 381, 362 P.2d 771 (1961). The reason for these rules is to permit the application of common sense to the terms used in the legislation in order to avoid an absurdity which the Legislature ought not to be presumed to have intended. *Ex Parte DeVore*, supra. See *State v. Herrera*, 86 N.M. 224, 522 P.2d 76 (1974).

It would be absurd to hold that the Legislature intended all killings in the unlawful operation of a motor vehicle, except where there were violations of §§ 66–8–102 and 66–8–113, N.M.S.A.1978, to be treated as misdemeanors. Such a view would include those unlawful operations where the motor vehicle is used as a weapon (a) to run down and kill a pedestrian; (b) to repeatedly drive over a person lying on the ground; (c) to repeatedly strike an opponent's vehicle in a "fight" between two cars. Killings in such situations involve first and second degree murder and voluntary manslaughter. The Legislature could not have intended that killings in such situations would have a maximum punishment of a $100 fine and 90 days in jail. See § 66–8–7, N.M.S.A.1978; compare *State v. Herrera*, supra.

The facts in this case, however, do not involve a situation where the unlawful operation of the vehicle, but for § 66–8–101, supra, would be felonious. Defendant's requested instructions stated a theory of a lesser included offense, which by definition, must have been necessarily included within the charge of homicide by vehicle by reckless driving. See *State v. Wingate*, 87 N.M. 397, 534 P.2d 776 (Ct.App.1975). Although neither the requested instructions nor the briefs identify a specific "unlawful operation", several are in evidence—speeding, driving on the wrong side of the road, careless driving. Sections 66–7–301, 66–7–308, 66–8–114, N.M.S.A.1978. These are in the category of an unlawful act not amounting to a felony which, but for § 66–8–101, supra, would be involuntary manslaughter where there is a killing in the commission of these unlawful acts. Section 30–2–3(B), N.M.S.A.1978.

It would be absurd to hold that the Legislature intended all vehicular killings by unlawful acts not amounting to a felony, except where there were violations of §§ 66–8–102 and 66–8–113, supra, to be treated as misdemeanors. Two examples of the penalty consequences are: 1. If the vehicular killing resulted from driving on the wrong side of the road, the penalty for the killing would not be greater than the penalty for driving on the wrong side of the road without a killing. Section 66–8–7, supra, would be the penalty for the underlying offense and, under defendant's theory, § 66–8–7, supra, is the penalty where that offense results in a killing. 2. If the vehicular killing resulted from driving on the wrong side of the road, the penalty for that killing under § 66–8–7, supra, would be less than penalties specified for "under the influence" driving or reckless driving in violation of §§ 66–8–102 and 66–8–113, supra. Both of these offenses have minimum penalties, § 66–8–7, supra, does not. The Legislature could not have intended that a vehicular killing would have the same or a lesser penalty consequence than the underlying offense involved in the killing. *Compare State v. Herrera*, supra.

A lesser included offense must be "necessarily included". *State v. Wingate*, supra. Section 66–8–114, supra, defines "careless driving" and § 66–8–113, supra, includes "driving carelessly" in its definition of reckless driving. There was evidence which, if believed, would have supported a finding of careless driving as opposed to reckless driving. Thus, there was a lesser offense included within the offense of reckless driving, and there was evidence to support the lesser offense. *State v. Wingate*, supra. If defendant had been charged with reckless driving, he would have been entitled to an instruction on careless driving as a lesser included offense. The charge, however, was not reckless driving; the charge was homicide by vehicle by reckless driving.

Is there a lesser included offense of homicide by vehicle by careless driving? If so, it has not been declared to be a felony and, thus, is a misdemeanor under § 66–8–7, supra. The maximum penalty for such a killing by careless driving would be no more than the maximum penalty for careless driving without a killing. It would be absurd to hold the Legislature intended that a killing by careless driving would be treated as a misdemeanor. The Legislature could not have intended that a killing by careless driving would have such a penalty consequence. To avoid an absurd result, I would hold that the Legislature had no intent that

there be lesser included offenses included within the offense of homicide by vehicle. Compare *State v. Trujillo*, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973).

Summarizing the foregoing discussion:

1. Section 66–8–101, supra, does not apply to vehicular killings where the unlawful operation is a felony.

2. Section 66–8–101, supra, does not apply to vehicular killings where the unlawful operation does not amount to a felony unless the unlawful operation is included within § 66–8–101(B), supra. The only unlawful acts (which do not amount to felonies) included within the homicide by vehicle statute are those acts which are violations of §§ 66–8–102 and 66–8–113, supra.

Paraphrasing *State v. Deming*, 66 N.M. 175, 344 P.2d 481, 77 A.L.R.2d 964 (1959): To hold otherwise, that all vehicular killings are misdemeanors except where §§ 66–8–102 and 66–8–113, supra, are violated, when the whole country is concerned with the number of highway fatalities, would be to arrive at a most incongruous result, to say the least.

Inasmuch as § 66–8–101, supra, applies only to violations of §§ 66–8–102 and 66–8–113, supra, § 66–8–101, supra, is no more than a specific statute applicable to situations which would, but for the statute, have been prosecuted under the involuntary manslaughter statute. This is shown by the following cases, in sequence: *State v. Rice*, 58 N.M. 205, 269 P.2d 751 (1954); *State v. Tracy*, 64 N.M. 55, 323 P.2d 1096 (1958); *State v. Deming*, supra; *State v. Dutchover*, 85 N.M. 72, 509 P.2d 264 (Ct.App. 1973).

I would affirm the conviction.