608 P.2d 1125
STATE of New Mexico,
Plaintiff-Appellee,

v.

Marcos FRANCO, Defendant-Appellant.

STATE of New Mexico,
Defendant-Appellee,

v.

Gerald BURNETT, Defendant-Appellant.

Nos. 4171, 4281.

Court of Appeals of New Mexico.

Jan. 29, 1980.

Writ of Certiorari Denied
Feb. 26, 1980.

Larry R. Hill, Albert J. Rivera, Alamogordo, for defendants-appellants.

Jeff Bingaman, Atty. Gen., Lawrence A. Barela, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendants appeal their convictions of possession of marijuana with intent to dis-

tribute. The marijuana was found in the trunk of a car driven by Burnett and in which Franco was a passenger. The initial stop of the car was by an agent of the United States Border Patrol on roving patrol. The entry into the trunk was also by Border Patrol agents. Defendants challenge (1) the initial stop and (2) the search.

*The Initial Stop*

The Border Patrol maintains a fixed checkpoint for aliens on Highway 54, in Otero County, approximately 20 miles north of the border between Texas and New Mexico. The events in question occurred south of the fixed checkpoint, which was not open at the time. Agents at the fixed checkpoint had departed at midnight; the next shift was traveling to the fixed checkpoint from El Paso, Texas but had not yet arrived. Agent Nelson was patrolling the highway south of the checkpoint.

Nelson, driving a marked patrol car, came up behind a 1973 Chevrolet, which swerved to the side of the highway as Nelson approached. Upon passing the Chevrolet, Nelson noted that it contained two persons. After passing, Nelson saw the Chevrolet slow down; Nelson also slowed down to a speed of 35 miles per hour. The Chevrolet did not gain on Nelson, "[i]f anything, it was losing." Nelson came to a stop; the Chevrolet then resumed speed and passed Nelson.

"The area that we're talking about is about three miles short of the checkpoint. It's notorious for a point where they would let aliens out to walk around the checkpoint." In Nelson's experience, that had happened many times.

Nelson pursued the Chevrolet and when he came up behind it, Nelson turned on his red lights. The Chevrolet did not pull over. Nelson called for a backup vehicle to assist in stopping the Chevrolet. When the backup vehicle arrived Nelson turned on his siren. The Chevrolet then stopped.

■ *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) holds that the Border Patrol agent must have a reasonable suspicion to justify a roving patrol stop. "[W]e hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion."

The reasonable suspicion must be based on specific articulable facts and rational inferences from the facts. However, "the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling." The officer's assessment of the facts and the reasonableness of the officer's suspicion is to be judged by an objective standard. *State v. Galvan*, 90 N.M. 129, 560 P.2d 550 (Ct.App. 1977).

■ *United States v. Brignoni-Ponce*, supra, states that officers may consider the characteristics of the area in which they encounter a vehicle, including previous experience with alien traffic in the area. The officer may also consider the driver's behavior "as erratic driving or obvious attempts to evade officers can support a reasonable suspicion."

■ The driving behavior of the Chevrolet both when Nelson first approached and after Nelson passed the Chevrolet in an area near the fixed checkpoint, notorious for a place where aliens walk around the fixed checkpoint, provided Nelson with reasonable suspicion to stop the Chevrolet.

*The Search*

Once stopped "the officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause." *United States v. Brignoni-Ponce*, supra. There was no consent; the issue is probable cause to search.

When the Chevrolet stopped, Nelson stopped behind it, with the lights of the patrol car shining on the rear of the Chevrolet. Nelson went to the Chevrolet and identified himself as an agent. In response to Nelson's question, defendants identified

themselves as United States citizens. Burnett produced his driver's license. Nelson asked from where the Chevrolet had come. Defendants informed Nelson they were returning from having taken Franco's son to the El Paso airport. Defendants responded in the affirmative when asked if the son had had any luggage.

Nelson asked defendants to get out of the car; defendants complied. All were at the rear of the Chevrolet. Nelson asked if there was anything in the trunk; defendants replied in the negative. Nelson asked defendants to open the trunk, they replied that they had no key.

The search began at this point; probable cause must be judged at this point. The search was for the key to the trunk. During the course of this search, an officer peered into the trunk through a place where a speaker had been mounted on the rear shelf space of the car. With the aid of a flashlight the officer could see two burlap bags, but could not tell if there was any person in the trunk. The trunk of the car is a typical place where an alien might hide. Footnote 1 in *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975). Being unable to find the key, the agents forced open the trunk lid. There were no persons in the trunk but the burlap bags contained a substantial amount of marijuana.

██ The required probable cause was probable cause to search for illegal aliens. *United States v. Ortiz*, supra. The probable cause required was a reasonable ground to believe that the car contained an illegal alien. The reasonableness of Nelson's belief is to be determined by whether the facts and circumstances known to him, and of which he had reasonably trustworthy information, were sufficient to warrant men of reasonable caution to believe that the car contained an illegal alien. *State v. Santillanes*, 89 N.M. 727, 557 P.2d 576 (Ct. App. 1976). Nelson was not required to have probable cause at the time of the initial stop. Information acquired while properly checking out the suspicious circumstances can be utilized in determining prob-

able cause. Compare *State v. Garcia*, 83 N.M. 490, 493 P.2d 975 (Ct.App. 1971). Probable cause was, however, required to exist at the time Nelson began searching the car for the key to the trunk.

The facts and circumstances, known to Nelson, and which were reasonably trustworthy information, were:

(a) Nelson had observed erratic driving in an area where it was notorious for aliens to get out of a car and walk around the fixed checkpoint.

(b) Defendants had come from El Paso, Texas, on the border with Mexico.

(c) At the time of the initial stop, Nelson "noticed on my way up to the car that there was [sic] fresh scuff marks near the keyhole of the trunk where the dust had been wiped off as if someone had turned the key in the keyhole." When defendants denied having a key to the trunk "I then said that it was obvious it had been opened, because of the scuff marks near the keyhole    . . .." Again asked, defendants again denied they had a key to the trunk.

(d) Defendants gave inconsistent responses when asked where the son's luggage had been carried. One said in the back seat; the other said in the trunk.

(e) When Nelson asked defendants about their citizenship, they answered in an evasive manner. Nelson said "they didn't reply in a very clear manner, and I asked them if they were having some sort of problems. Neither subject looked at me at the time, and they both answered but in a very shaky manner. It wasn't a very direct forceful answer, so to speak."

██ *United States v. Ortiz,,* supra, states that the behavior of the occupants of the stopped vehicle and the responses to officers' questions are factors properly to be taken into account in deciding probable cause. Here we have erratic driving and inconsistent answers in connection with the use of the trunk of a car coming from the border. This behavior took place south of a fixed checkpoint at a location notorious for aliens leaving a car to walk around the checkpoint. Nelson was entitled to draw

reasonable inferences from the facts known to him in light of his knowledge of the area and his prior experience with aliens and smugglers. *United States v. Ortiz*, supra. We cannot say as a matter of law that the trial court erred in holding that Nelson had probable cause to search for illegal aliens. The trial court could properly deny the motions to suppress.

The judgments and sentences are affirmed.

IT IS SO ORDERED.

HERNANDEZ and WALTERS, JJ., concur.