260 P.2d 370

**STATE v. THOMPSON.**

No. 5566.

Supreme Court of New Mexico.

Aug. 18, 1953.

"Any person or persons who may skin or remove from the carcass, any part of the hide of any neat cattle found dead, without permission from the owner, shall be deemed guilty of larceny, and on conviction thereof shall be punished in the manner provided by law for the punishment of larceny: Provided, nothing herein shall be deemed to prevent the skinning of animals killed by railroad companies; by the employees of any railroad company by which such stock may have been killed."

The appellee was charged by information with violation of the above section. The specific charge in the information is that the defendant did, in Lea County, New Mexico, on or about November 23, 1951, skin one neat calf belonging to G. H. Bingham, without permission from said owner. The appellee moved to quash the information, and the appeal was taken from an order sustaining the motion and quashing the information. The grounds upon which the motion to quash are based are that the statute upon which the information was drawn is unconstitutional. The district court considered the act in question unconstitutional and held it void because: (1) It discriminates against all persons except employees of railroad companies by whom cattle have been killed; (2) that its meaning is so uncertain, vague and indefinite.

Richard H. Robinson, Atty. Gen., Hilario Rubio, Asst. Atty. Gen., and C. C. McCulloh, Asst. Atty. Gen., for appellant.

Neal & Girand, Hobbs, for appellee.

LUJAN, Justice.

The State has brought this appeal to defend the constitutional validity of Section 41–418 of the 1941 Compilation, which provides:

and violates the Sixth and Fourteenth Amendments of the Constitution of the United States and the due process clause of the State Constitution; (3) that the statute attempts to prohibit acts decreeing said acts to be larceny when the acts attempted to be prohibited by the statute have no relation whatever to the crime of larceny nor does the statute contemplate any of the necessary elements of the crime of larceny as being necessary ingredients of the offense; (4) that the statute is too vague, uncertain and indefinite to be enforced, and does not constitute a reasonable exercise of police power, in that it does not appear that it had for its enactment the prevention of manifest and anticipated evils or the preservation of the public health, safety, morals or general welfare.

 It readily appears that the section in question provides for the punishment of all persons who skin or remove the hide from the carcass of neat cattle found dead without the permission of the owner, but exempts all employees of railroad companies so doing when the animal is killed by the railroad company. It is well settled that the Legislature may classify for legislative purposes without offending against the constitutional requirement that the laws must be general. But this power is limited by the requirement that the classification must rest upon some rational and substantial basis inherent in the subject-matter, some difference in situation which distinguishes those within the class from those without, and which rationally justifies different or unequal treatment. Unless there is such a legal basis for classification, penalties imposed by criminal statutes must apply equally, without privileges or immunities on the one hand or additional burdens upon the other. These principles are fundamental. Neither the federal nor the state provisions relating to privileges and immunities prohibit the legislature to classify objects or persons who may become subject to the provisions of a law to the exclusion of others. The rule is stated in 16 C.J.S., Constitutional Law, § 489, as follows:

"* * * if the legislature has power to deal with the subject matter of the classification, and there is a reasonable ground for the classification and the law operates equally on all within the same class, it is valid, even though the act confers different rights or imposes different burdens on the several classes, * * *."

 Due process of law does not prohibit classification for legislative purposes. In 16 C.J.S., Constitutional Law, § 569, (3) Exercise of Legislative Power. (Classification) We find the following language:

"* * * The guaranty of 'due process of law' or 'law of the land' has often been considered in connec-

tion with class legislation, it generally being held that the guaranty does not prohibit classification for the purpose of legislation, provided there is a natural and reasonable basis therefor, and is not arbitrary or capricious, and is based on a substantial difference between those to whom it applies and those to whom it does not apply, and provided the law is so framed as to extend to and embrace equally all persons who are or may be in the like situation and circumstances."

The following cases are cited in support of the text: Lloyd Garretson Co. v. Robinson, 178 Wash. 601, 35 P.2d 504; Pauly v. Keebler, 175 Wis. 428, 185 N.W. 554; Schaaf v. South Dakota Rural Credits Board, 39 S.D. 377, 164 N.W. 964; Barrington v. Barrington, 206 Ala. 192, 89 So. 512, 17 A.L.R. 789.

■ The equal protection of the Fourteenth Amendment of the Constitution of the United States and Article 2, Section 18 of the State Constitution have for all practical purposes the same effect. They constitute a guaranty that all persons subject to state legislation shall be treated alike under similar circumstances and conditions in privileges conferred and liabilities imposed. They guarantee only the protection enjoyed by other persons or classes in the same place or situation and under like circumstances. 16 C.J.S., Constitutional Law, § 502; People v. England, 140 Cal. App. 310, 35 P.2d 565; Ex parte Wilson, 330 Mo. 230, 48 S.W.2d 919. It follows that legislation may be limited in scope and adjusted to various situations. If it makes no arbitrary or unreasonable distinction within the sphere of its operation and accords substantially equal and uniform treatment to all persons similarly situated, the law complies with the equality provisions. State v. Safeway Stores, 106 Mont. 182, 76 P.2d 81. Thus both classification and discrimination or distinction may be made in a law, provided the discrimination or distinction has a reasonable foundation or rational basis and is not entirely arbitrary. Hutcheson v. Atherton, 44 N.M. 144, 99 P. 2d 462; 16 C.J.S., Constitutional Law, § 505. The constitutional guarantees of equal protection and against special privileges and immunities have ever been construed in the light of the right of the state to exercise its police power. In his works on Constitutional Limitations, 8th Ed., Vol. 2, p. 813, Cooley, says:

"But a state may classify with reference to an evil to be prevented, and if the class discriminated against is, or reasonably might be, considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one dependent upon experience. Mr. Justice Holmes, in de-

livering the opinion of the United States Supreme Court, said: 'The demand for symmetry ignores the specific difference that experience is supposed to have shown to have marked the class. *It is not enough to invalidate the law that others may do the same thing and go unpunished,* if, as a matter of fact, it is found that the danger is characteristic of the class named. The state may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.' " (Emphasis ours.)

■ Based upon these general principles, it seems to us that the classification appearing in the questioned section is entirely constitutional.

■ The next ground upon which the motion to quash was based is that the questioned section under which the information was drawn is uncertain, vague and indefinite and therefore invalid and unconstitutional in that it violates the Sixth Amendment to the Constitution of the United States. The court found:

"That the statute is unconstitutional and void in that its meaning is so uncertain, vague and indefinite, and violates the 6th and 14th Amendments of the Constitution of the United States and the due process clause of the State of New Mexico."

It will be seen from the foregoing finding that the question to be determined is whether the statute above quoted, defining what acts are prohibited and made punishable when committed by persons other than employees of railroad companies, and providing that such persons shall be deemed guilty of larceny and on conviction thereof shall be punished in the manner provided by law for the punishment of larceny, is void for uncertainty, vagueness and indefiniteness. The cardinal rule in the construction of a statute is to ascertain the intention of the Legislature as it is expressed in the words of the statute, and for this purpose the whole act must be considered. The law, it is true, in its tenderness for life and liberty, requires that penal statutes shall be strictly construed, by which is meant that courts will not extend punishment to cases not plainly within the language used. At the same time such statutes are to be fairly and reasonably construed, and the courts will not by a narrow and strained construction exclude from its operation cases plainly within their scope of meaning. This intention is to be ascertained, primarily, of course, from the language of the statute, and, if the language used is plain and unambiguous, the Legislature must be understood as meaning what it expressly declared. See United States v. Lacher, 134 U.S. 624, 10 S.Ct. 624, 625, 33 L.Ed. 1080. The language used in the act is explicit; its meaning unmistakable. No ambiguity patent or

latent appears to us in the text. It is perfectly clear that the object of the Act was to protect the ownership of a certain class of property, its title being "An act for the protection of livestock and other purposes" and pertaining to no other subject than live stock. Laws of 1884, Chapter 47. We believe that in the opinion of the Legislature the act was needed, to prevent a kind of theft peculiarly easy of commission and difficult of discovery and punishment, and to afford special protection to the important industry of stockraising.

▮▮▮ Finally the appellee lays much stress in his brief upon the proposition that skinning neat cattle found dead without the permission of the owner is a different offense and of different kind, nature and quality from that named in Section 41–419 of the 1941 Compilation, and therefore he could not be held guilty. On this phase of the case the court found:

"That the statute attempts to prohibit acts decreeing said acts to be larceny when the acts attempted to be prohibited by the statute have no relation whatever to the crime of larceny nor does the statute contemplate any of the necessary elements of the crime of larcency as being necessary ingredients of the offense charged."

It cannot be gainsaid that the hide of neat cattle is a part of the animal and its removal from the carcass without permission of the owner and subsequent appropriation thereof constitutes theft. The legislature said it shall constitute the crime of larceny. By the constitution of the state the legislature is invested with plenary legislative power, and the defining of crime and prescribing punishment therefor are legislative functions. In Cooley on Constitutional Limitations, 6th Ed., c. 7, p. 201, it is said:

"* * * The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the lawmaking power. Any legislative act which does not encroach upon the powers apportioned to the other departments of the government, being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the

Constitution, and the case shown to come within them."

It is no part of the duty of the courts to inquire into the wisdom, the policy, or the justness of an act of the legislature. Arnold v. Board of Barber Examiners, 45 N. M. 57, 109 P.2d 779. Our duty is to ascertain and declare the intention of the legislature, and to give effect to the legislative will as expressed in the laws. Asplund v. Alarid, 29 N.M. 129, 219 P. 786; In re Santillanes, 47 N.M. 140, 138 P.2d 503. Every legislative act comes before this court sur-

rounded with the presumption of constitutionality, and this presumption continues until the act under review clearly appears to contravene some provision of the Constitution. Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407; State ex rel. New Mexico Dry Cleaning Board v. Cauthen, 48 N.M. 436, 152 P.2d 255. The courts are by the constitution not made critics of the legislature, but rather guardians of the Constitution; and, though the courts might have a doubt as to the constitutionality of the legislative act, all such doubts must be resolved in favor of the law. State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511. The crime and punishment can be separated and distinguished by the legislature. One statute may create an offense, and another provide for its punishment. Palmer v. Lenovitz, 35 App.D.C. 303; People v. Tokoly, 313 Ill. 177, 144 N.E. 808; 22 C.J.S., Criminal Law, § 25, page 77.

Both parties, in their briefs, make reference to the case of State v. Prince, 52 N.M. 15, 189 P.2d 993, which under the history of the Act here involved is not controlling in this case. The turning point in that case was the fact that in a prior act dealing with the crime of embezzlement it was required the act be done with a criminal intent, while the amendatory and repealing act left out any requirement of criminal intent, and on its face made the mere conversion of the personal property of another a criminal offense. It was because of this fact the majority refused to read into the act necessity for a criminal intent, but even so Mr. Justice Sadler in his dissent made a strong case for upholding the statute on the theory criminal intent was necessarily implied.

For the reasons stated, we hold that Section 41–418, supra, upon which the information was predicated, is constitutional, and the information charged a violation thereof by appellee. The trial court erred, therefore, in sustaining the motion to quash, and its judgment is reversed and the cause remanded with instructions to overrule the motion to quash, and,

It is so ordered.

McGHEE, COMPTON, and SEYMOUR, JJ., concur.

SADLER, C. J., not participating.