493 P.2d 975

STATE of New Mexico, Plaintiff-Appellee,

v.

Paul GARCIA, Defendant-Appellant.

No. 690.

Court of Appeals of New Mexico.

Dec. 22, 1971.

Rehearing Denied Jan. 14, 1972.

Certiorari Denied Feb. 16, 1972.

F. Stephen Boone, Stockly, Sierra, Smith & Boone, P.A., Santa Fe, for appellant.

David L. Norvell, Atty. Gen., Ronald Van Amberg, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

Defendant was indicted and convicted of "unlawful possession of a narcotic drug" in violation of § 54–7–13, N.M.S.A.1953 (Repl.Vol. 8, pt. 2) as that section was worded prior to its amendment by Laws 1971, ch. 245, § 6. The applicable wording is found in Laws 1968, ch. 32, § 1. Defendant's appeal presents issues concerning: (1) search and seizure and (2) refused instructions. We decide these issues and, in addition, refer to the asserted defect in § 54–7–13, supra, that is raised in the dissent.

*Search and seizure.*

There is evidence that defendant was in possession of heroin. Defendant moved to suppress the heroin, asserting it was obtained by an unreasonable search and seizure. After an evidentiary hearing, the motion was denied.

Three witnesses testified at the hearing —defendant, his wife and Officer Giron. Defendant's evidence, in support of the motion, is that he had gone to his cousin's house between 8:30 and 9:00 a. m.; that no one answered the door; that he lay down on a couch on the porch and went to sleep. According to defendant he was awakened when Giron "grabbed me by the mouth, and I started fighting;" that Giron told defendant he was under arrest for possession of heroin and Giron had a bottle in his hand. Since this testimony does not refer to a search or seizure, the motion could have been properly denied at this point.

The State, however, called Giron. Giron testified that at 10:30 a. m. ". . . Lieutenant Mier and myself received a call (from an unidentified person) . . . telling us that Paul Garcia could not be awakened, that he was asleep or apparently passed out after a dosage of heroin. That Paul Garcia had been selling heroin the night before. That he had brought this heroin from Albuquerque, and that this man was passed out on a couch at the rear of 617 Kathryn Street, that this man could not be awakened. . . ."

■ Giron and Mier responded to the call. They went to the street address named and found, on a couch on the porch, a man who Giron recognized as Garcia, the defendant. Since this location was private property, defendant argues that the officers had no right to be there. We disagree; the officers were doing no more than investigating in response to the telephone call.

Giron patted defendant on his knee to see if he was alive; defendant came up fighting. The officers grabbed defendant to hold him back, identified themselves as police officers and told defendant of the telephone call they had received. Defendant started yelling: "You're framing me." They asked defendant if he had any heroin in his possession, ". . . and again he tried to take off from us, . . ." The officers held defendant's arms and turned him loose after he settled down.

At this point, according to Giron, defendant was asked to empty his pockets. Defendant took money from his pants pocket and the officers told him to put the money back. ". . . At this time, he tried to take off again, and this time we had to hold him after that all the time, because all the time he insisted on running. At this time, he started yelling to the neighbors that he was being framed, and 'Look what this officer is doing to me,' and 'They planted this stuff on me.' At this time, I started frisking his pockets from the outside, and I came up to his left shirt pocket where I felt a small bottle,

. . ." The officer took the bottle, which contained the heroin.

At the times defendant tried to get away from the officers, and the officers held him back, defendant "took swings" at the officers.

■ Defendant was "seized" within the meaning of the constitutional prohibition of unreasonable search and seizure, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968). This seizure occurred when the officers restrained defendant after defendant "came up fighting" on being awakened. This seizure [for purposes of investigation, State v. Hilliard, 81 N.M. 407, 467 P.2d 733 (Ct.App.1970)], was not unreasonable. While the hearsay information from the telephone call did not give the officers probable cause to detain defendant, the corroboration of that telephone call did. The corroboration was that the person involved was the defendant, he was at the named address, and on the couch as the caller had said. In addition, Giron was concerned about an overdose from "the way he wanted to run." See State v. Deltenre, 77 N.M. 497, 424 P. 2d 782 (1966), cert. denied, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967).

■ After the first instance of physical restraint, defendant was asked if he had heroin in his possession. Defendant yelled that he was being framed and again tried to run. The second physical restraint occurred. At this point, defendant was asked to empty his pockets. This request by the officers, in these circumstances, was a search. Lee v. United States, 98 U.S.App. D.C. 97, 232 F.2d 354 (1956).

The emptying of the pockets was not completed however; defendant again attempted to run away. At this point defendant was again held by the officers. Defendant again started yelling that he was being framed, that the "stuff" had been planted and contemporaneously the heroin was discovered in a shirt pocket. Even if a search for weapons was reasonable when defendant was told to empty his pockets (and there is evidence which sup-

ports a weapon search at this point), defendant contends the search, which resulted in the discovery of the heroin, was unreasonable because the small bottle that Giron felt in the shirt pocket was obviously not a weapon.

■ In answering this claim we expressly do not consider whether the heroin was discovered and seized as contraband during the course of a lawful search for weapons. See State v. Carlton, 82 N.M. 537, 484 P.2d 757 (Ct.App.1971); compare State v. Ramirez, 79 N.M. 475, 444 P.2d 986 (1968). In our opinion, Giron had probable cause to arrest defendant for unlawful possession of heroin prior to the seizure of the heroin.

Giron had more information than did the officer in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Not only had portions of the telephone call been corroborated, but defendant had fought with the officers, had attempted to flee and was yelling that he had been framed and the "stuff" had been planted. ". . . [D]eliberately furtive actions and flight at the approach of . . . law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest. . . ." Sibron v. New York, supra; see State v. Baxter, 68 Wash.2d 416, 413 P.2d 638 (1966). Here, not only had defendant attempted to flee, he had fought with the officers and yelled that he was being framed. The officers had specific knowledge of these incidents.

The fighting, fleeing and yelling occurred after defendant had been told about the telephone call. These three incidents, together with the portion of the telephone information that had been verified, provided probable cause for an arrest when defendant was asked to empty his pockets. By probable cause we mean, in this case, that the officer had reasonable grounds to believe that the crime of unlawful possession of heroin was being committed in his presence. State v. Ramirez, supra.

There being probable cause for the arrest, the search and seizure, contemporaneous with the arrest, was valid as an incident of the arrest. State v. Deltenre, supra. The trial court did not err in denying the motion to suppress or in admitting the heroin at trial.

Defendant also argues, under this point, that the officers should have gotten a search warrant and, because the search was not under authority of a warrant, it was unreasonable. We disagree. The absence of a warrant is not a controlling factor in the circumstances of this case. State v. Deltenre, supra.

*Refused instructions.*

■ Defendant requested an instruction which would have permitted the jury to determine whether the search and seizure was reasonable. This was a matter of law for the court to determine. The request was properly refused. State v. Deltenre, supra.

■ Defendant also requested an instruction concerning a citizen's right to resist an unlawful arrest. This instruction was properly refused for two reasons. First, the requested instruction would have the jury determine probable cause; this was a matter of law for the court. State v. Deltenre, supra. Second, defendant would justify the requested instruction on the basis that defendant was "arrested" at the time of the first "seizure." This is incorrect; the seizure, when defendant came up fighting after being awakened, was short of an arrest. See Terry v. Ohio, supra. Thus, the refused instruction would have interjected a false issue into the case.

*Asserted defect in Section 54–7–13, supra.*

The applicable wording of the statute is:

" 'Whoever, not being a manufacturer or wholesaler licensed pursuant to Section 54–7–4 New Mexico Statutes Annotated, 1953 Compilation, physician, veter-

inarian, dentist, nurse acting under the direction of a physician, or an employee of a hospital or laboratory acting under the direction of its superintendent or official in immediate charge, or a common carrier or messenger when transporting any drug mentioned herein between parties hereinbefore mentioned in the same package in which the drug was delivered to him for transportation, is found in possession thereof, except by reason of an order or prescription lawfully and properly issued shall be punished as hereinafter provided.' "

The dissent states that with the exceptions eliminated, the statute reads:

"Whoever, . . . is found in possession thereof, . . . shall be punished as hereinafter provided."

The dissent states that "the statute does not state a narcotic drug crime."

■ The statute is certainly not a model of clarity; nevertheless, it does prohibit the unlawful possession of narcotic drugs and, thus, prohibits the unlawful possession of heroin.

State v. Thompson, 57 N.M. 459, 260 P. 2d 370 (1953) states:

" . . . The cardinal rule in the construction of a statute is to ascertain the intention of the Legislature as it is expressed in the words of the statute, and for this purpose the whole act must be considered. The law, it is true, in its tenderness for life and liberty, requires that penal statutes shall be strictly construed, by which is meant that courts will not extend punishment to cases not plainly within the language used. At the same time such statutes are to be fairly and reasonably construed, and the courts will not by a narrow and strained construction exclude from its operation cases plainly within their scope of meaning. . . . "

This rule of construction was recognized in State v. Ortiz, 78 N.M. 507, 433 P.2d 92 (Ct.App.1967). *Ortiz* states:

"If the language of a statute renders its application absurd or unreasonable, it will be construed according to its obvious spirit or reason. . . . But, . . . where the meaning of the language is plain, it must be given effect, and there is no room for construction. . . . "

*Ortiz* also involved § 54–7–13, supra, but the statutory language there involved was plain and unambiguous. Here, there is an ambiguity and construction is required.

The exceptions within § 54–7–13, supra, which the dissent disregards, refer to "any drug mentioned herein." The "possession thereof" of § 54–7–13, supra, refers to "any drug mentioned." "Herein" means the legislative act of which § 54–7–13, supra, is a part. Section 1 of that act, § 54–7–1, N.M.S.A.1953 (Repl.Vol. 8, pt. 2), refers to "narcotic drug." "Narcotic drug" is defined in § 54–7–2, N.M.S.A.1953 (Repl.Vol. 8, pt. 2) to include opium and opium is defined to include heroin.

The intention of the Legislature, as expressed in the words of the foregoing statutes, is to prohibit the possession of heroin unless that possession comes within stated exceptions not involved in this case. Construing the statute according to its obvious spirit and reason, in a fair and reasonable manner, and to avoid an absurd result, we hold that when defendant was charged with violating § 54–7–13, supra, he was charged with a crime.

The Legislature may have intended a change by its 1971 amendment to § 54–7–13, supra, but we are concerned only with the statute prior, not subsequent, to the amendment. See Stang v. Hertz Corporation, 81 N.M. 69, 463 P.2d 45 (Ct.App. 1969), aff'd 81 N.M. 348, 467 P.2d 14 (1970).

Although the context is different, in State v. Lott, 73 N.M. 280, 387 P.2d 855 (1964) the New Mexico Supreme Court judicially noticed that § 54–7–13, supra, is a felony statute.

The judgment and sentence is affirmed. It is so ordered.

HENDLEY, J., concurs.

SUTIN, Judge (dissenting).

The wisdom used by judges construing criminal statutes often changes from judge to judge and from court to court. This thought has been true throughout judicial history, and it will continue in the decades that lie ahead. Some judges desire to act in a legislative capacity. Some are strict traditionalists. Some are scholars. Some are humanists. Each may have a different sense of justice. If the public and the news media were familiar with this concept, it would lend dignity to the courts instead of criticism.

Garcia was convicted of the crime of unlawful possession of a narcotic drug, to-wit: heroin, under § 54–7–13, N.M.S.A. 1953 (Repl.Vol. 8, pt. 2). This section did not mention the term "narcotic" drug. It was amended by the Laws of 1971, ch. 245, § 6 [§ 54–7–13, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, Supp.)], to insert the word "narcotic" before the word "drug" in two places, and inserted the words "in possession of a narcotic drug" for "possession thereof." The date of the offense committed by Garcia was July 15, 1970, when the previous section was in effect.

Section 54–7–13, supra, prior to amendment, is set forth in the majority opinion.

Section 54–7–1, N.M.S.A.1953 (Repl.Vol. 8, pt. 2) reads as follows:

It shall be *unlawful* for *any person* to manufacture, *possess*, have under his control, sell, prescribe, administer, dispense or compound *any narcotic drug* except as authorized or provided in this act. [Emphasis added.]

Garcia was not charged under this statute. Why not? It is plain and unambiguous.

The New Mexico Narcotic Drug Statute, as originally enacted in 1935, was adopted from the Uniform Narcotic Drug Act. Section 54–7–49, N.M.S.A.1953 (Repl.Vol. 8, pt. 2); Martinez v. Cox, 75 N.M. 417,

405 P.2d 659 (1965). However, the Uniform Narcotic Drug Act contained no provision comparable to § 54–7–13, supra. State v. Ortiz, 78 N.M. 507, 433 P.2d 92 (Ct.App.1967).

Prior to the 1971 amendment, § 54–7–13, supra, was not applicable to Garcia, and did not state a narcotic drug offense. Stripped of the exceptions, the statute read:

Whoever, . . . is found in possession thereof, . . . shall be punished as hereinafter provided.

As amended in 1971, stripped of exceptions, the statute now reads:

Whoever, . . . is found in possession of a narcotic drug . . . shall be punished as hereinafter provided.

The issue is: Does this court have the power to substitute the phrase "in possession of a narcotic drug," for "in possession thereof," to make possession of "narcotic" drug a crime under § 54–7–13? The answer is "no." Vukovich v. St. Louis, Rocky Mountain & Pacific Co., 40 N.M. 374, 60 P.2d 356 (1936); State v. Ortiz, supra; State v. Prince, 52 N.M. 15, 189 P. 2d 993 (1948); De Graftenreid v. Strong, 28 N.M. 91, 206 P. 694 (1922); State v. Dennis, 80 N.M. 262, 454 P.2d 276 (Ct. App.1969). The legislature recognized this fact and amended the statute itself.

The Supreme Court of the United States said that our problem is to construe what the legislature has written because it expresses its purpose in words. "It is for us to ascertain—neither to add nor subtract, neither to delete nor to distort." 62 Cases More or Less, Each containing Six Jars of Jam v. United States, 340 U.S. 593, 71 S. Ct. 515, 92 L.Ed 566 (U.S.N.M.1951). "This would be judicial legislation." Burch v. Foy, 62 N.M. 219, 308 P.2d 199 (1957). We cannot read language into a statute which is otherwise of plain meaning and import. Griffith v. Humble, 46 N.M. 113, 122 P.2d 134 (1942).

Garcia did not raise the issue in the trial court nor in this court. But where the statute does not state a narcotic drug crime, and Garcia cannot be found guilty, then this court, on its own motion, may determine the issue in the interest of justice or under the doctrine of jurisdiction and fundamental error. Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231 (1949); State v. Williams, 50 N.M. 28, 168 P.2d 850 (1946); State v. Walsh, 81 N.M. 65, 463 P.2d 41 (Ct.App.1969); State v. McNeece, 82 N.M. 345, 481 P.2d 707 (Ct.App.1971).

In State v. Ortiz, supra, the state requested this court to insert in § 54–7–13, supra, the words "duly licensed" before the word "manufacturer." This court refused to do so. The legislature in 1968 amended the section and inserted "licensed pursuant to section 54–7–4 NMSA 1953."

Under the 1971 amendment, the legislature itself recognized the invalidity of § 54–7–13 and inserted the word "narcotic," and "possession of a narcotic drug." We are not required to go further because the adoption of a statutory amendment is evidence of an intention of the legislature to change the provision of the original law. Stang v. Hertz Corp., 81 N.M. 69, 463 P.2d 45 (Ct.App.1969), affirmed, 81 N.M. 348, 367 P.2d 14 (1969). The power to define crimes is a legislative function. State v. Allen, 77 N.M. 433, 423 P.2d 867 (1967).

The majority opinion states that there is an ambiguity in § 54–7–13, supra, and construction is required. It quotes from State v. Ortiz, supra, but it omits the following language:

> If there be any ambiguity or doubt concerning the meaning of a criminal statute, it will be construed against the State which enacted it and in favor of the accused. State v. Couch, 52 N.M. 127, 193 P.2d 405 (1948).

State v. Couch speaks in stronger language:

> Since the state makes the laws they should be construed *most strongly* against it and in favor of the prisoner if they are ambiguous. [Emphasis added.]

The majority opinion has construed the statute most favorably to the state and against Garcia.

From *Couch* to *Ortiz* to *Garcia,* the rule of statutory construction rode on a merry-go-round. This is a good illustration of how principles change, 1948–1971, from judge to judge and from court to court.

I refrain from discussing the matter of search and seizure. To me, the motion of Garcia to suppress the heroin should have been sustained.

Garcia was not guilty of the offense charged under § 54–7–13, supra, and should be discharged.