652 P.2d 1222

**STATE of New Mexico, Plaintiff-Appellant,**

v.

**Richard Lamar WILLIS, Defendant-Appellee.**

**No. 5785.**

Court of Appeals of New Mexico.

Oct. 5, 1982.

Jeff Bingaman, Atty. Gen., Carol Vigil, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

John B. Bigelow, Chief Public Defender, David Stafford, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

OPINION

NEAL, Judge.

This appeal has been brought by the State challenging the trial court's dismissal of Count II of the grand jury indictment against the defendant, Richard Lamar Willis, charging him with vehicular homicide.

The only issue in this case is whether an unborn viable fetus is a human being for purposes of the New Mexico Vehicular homicide statute, § 66–8–101, N.M.S.A. 1978 (1982 Cum.Supp.).

As Judge Wood states in his specially concurring opinion: the killing of a human being for which § 66–8–101, *supra,* provides a punishment is "homicide" by vehicle. The killing of a fetus, under the common law, was not homicide unless the fetus had been born alive; until born alive there was no human being. *Keeler v. Superior Court of Amador County,* 2 Cal.3d 619, 87 Cal.Rptr. 481, 470 P.2d 617 (1970); *People v. Greer,* 79 Ill.2d 103, 37 Ill.Dec. 313, 402 N.E.2d 203 (1980); Means, *The Phoenix of Abortional Freedom: Etc.,* 17 N.Y.L.F. 335 (1971).

The question involved has been discussed in several well-documented law review articles: Criminal Law—Homicide—Fetus, 23 Vanderbilt Law Rev. at 854; Feticide in California—A Proposed Statutory Scheme, 12 Univ.Cal. Davis at 723; Feticide—The Unborn Child as a Human Being, 45 Tulane Law Review at 408; Born Alive, 1963 Crim. Law.Rev. at 748.

As stated in the Vanderbilt Law Rev. article at page 855 and 856:

The early common law did not attach human status to a fetus for the purposes of protection under the homicide statutes until quickening had occurred. Quickening, or animation, usually occurs between the sixteenth and twentieth week of pregnancy. By the mid-nineteenth century, however, the common law had shifted to the "born alive" theory. This theory stated that the unborn child is not a human being and hence cannot be the victim of homicide unless it is subsequently born alive. Early cases under the rule required a complete live birth as evidenced by an independent circulation. The rule was rather ambiguous, however, since there was no recognized standard of what constituted a live birth or an independent circulation. Despite these difficulties the supposed medical criterion of an independent circulation was the favorite view in England from 1780 until the passage of the Infanticide Acts of 1922 and 1938. No authoritative view of infanticide had been adopted by the courts in the United States by the end of the nineteenth century. By the middle of the twentieth century, however, the now prevailing view requiring live birth had been established. Basically, this majority American view is an elaborate version of the old common law rule, and a flood of cases have appeared trying to determine the exact moment when live birth actually occurs. * * *

It is interesting to note and the State concedes that all jurisdictions having considered this issue have held that the homicide statutes of their respective states do not apply to a viable fetus. In its sole argument the State urges that this Court should hold that the New Mexico Legislature did intend a viable fetus to be included within the definition of human being as found in the Vehicular Homicide Statute because of its existence in the New Mexico abortion statute; that the abortion statute demonstrates the Legislature's compelling interest to protect the life of a fetus.

There is no doubt that this State and every other state has an interest in protecting the life of an unborn child. The error that the State makes is in leaping to the conclusion that this interest makes feticide the statutory equivalent to homicide. Only the Legislature can decide to equate the two, and until they decide to do so there is no basis upon which to impose homicide sanctions for the destruction of a fetus. The Judiciary, without legislative authority, cannot expand the scope of the homicide statute to include feticide. This is true because (1) only the Legislature can substantially enlarge the scope of penal statutes, *United States v. Wiltberger,* 18 U.S. (5 Wheat) 76, 5 L.Ed. 37 (1820) and (2) such an expansion would violate defendant's right to be free of *ex post facto* enactments, since inclusion of viable fetus in the definition of human being would make defendant liable for a crime not proscribed when it occurred. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Bouie v. Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *State v. Norush,* 97 N.M. 660, 642 P.2d 119, 21 N.M.S.B.B. 17 at 533, 534 (Ct.App.1982).

The power to define crimes and to establish criminal penalties is a legislative function. *State v. Pendley,* 92 N.M. 658, 593 P.2d 755 (Ct.App.1979).

This is basically a question of statutory construction. In *State v. Garcia,* 83 N.M. 490, 493 P.2d 975 (Ct.App.1971), the court provided the following guidance:

* * * The cardinal rule in the construction of a statute is to ascertain the intention of the Legislature as it is expressed in the words of the statute, and for this purpose the whole act must be considered. The law requires that penal statutes shall be strictly construed, by which is meant that courts will not extend punishment to cases not plainly within the language used. * * *

Any ambiguity in a criminal statute is construed against the state. *State v. Ortiz,* 78 N.M. 507, 433 P.2d 92 (Ct.App.1967). If this standard is used, does the definition of "human being" include viable fetus? We hold that it does not.

In 1853–54, Art. 28, ch. II, § 10, the Legislature first enacted homicide statutes in

which the killing of a human being and the killing of an unborn infant child were separately addressed. Laws 1853–54, *supra.* Therefore it seems that the Legislature made a distinction between killing a human being and killing what we would consider a viable fetus today. The term "human being" has remained in the definition of murder and is found throughout the homicide statutes. Sections 30–2–1 through 30–2–9, N.M.S.A.1978 (1982 Cum.Supp.). The killing of an unborn infant child in New Mexico remained a crime until 1963 when it was repealed. Having differentiated between human beings and viable fetuses until 1963, it does not follow that the Legislature meant to include viable fetus within the definition of human being without specifically making provision therefor.

We must presume that the legislature was informed as to the existing law. *Bettini v. City of Las Cruces,* 82 N.M. 633, 485 P.2d 967 (1971). The Legislature had treated human beings and unborn infant children differently for over one hundred years. The repeal of the law making it a third degree felony to kill an unborn child seems to indicate that the Legislature no longer wanted this to be a crime and that the only crime against viable fetuses was to be found in the abortion statutes.

Moreover, we have reviewed case law from other jurisdictions and the cases are universally in accord with our position. Seven appellate courts since 1970 have addressed this issue. Three states have considered the matter in light of general homicide statutes. In each, the courts have held that the term "human being" did not include an unborn fetus. *People v. Greer,* 79 Ill.2d 103, 37 Ill.Dec. 313, 402 N.E.2d 203 (1980); *State v. Brown,* 378 S.2d 916 (La. 1979); *Keeler v. Superior Court,* 87 Cal. Rptr. 481, 2 Cal.3d 619, 470 P.2d 617 (1970). The other four states answering the issue presented in this case, is a viable fetus a human being within the meaning of a vehicular homicide statute, held that the term "human being" or "person" did not include a viable fetus. *State In the Interest of A.W.S.,* 182 N.J.Super. 278, 440 A.2d 1144 (1981); *People v. Guthrie,* 97 Mich.App. 226, 293 N.W.2d 775 (1980); *State v. Larsen,* 578

P.2d 1280 (Utah 1978); *State v. Dickinson,* 28 Ohio St.2d 65, 275 N.E.2d 599 (1971).

The decision of the trial court is affirmed.

IT IS SO ORDERED.

WOOD, Judge (specially concurring).

Donnelly, J., concurs.

Defendant was charged with killing the "unborn viable baby boy of Stella Benavidez" in the unlawful operation of a motor vehicle either by driving while under the influence of intoxicating liquor or by reckless driving. Section 66–8–101(A), N.M.S. A.1978 (1982 Cum.Supp.), requires the killing be "of a human being". Being of the opinion that the Legislature did not intend "human being" to include a "viable unborn full-term child", the trial court dismissed the charge.

The question of legislative intent arises because "human being" is not defined in the Motor Vehicle Code, of which § 66–8–101, *supra,* is a part. *See* Laws 1978, ch. 35. The Code does define "person" to include "every natural person," *see* § 66–1–4(B)(46), N.M.S.A.1978 (1982 Cum.Supp.), but this definition of "person" is not at all helpful. A review of the provisions of the Motor Vehicle Code shows that "person" is used in the sense of one who has been born, and never in the sense of an unborn fetus. *See,* as examples, §§ 66–5–11, 66–5–39, 66–5–40, 66–5–401, 66–7–201, 66–7–356, 66–8–108, N.M.S.A.1978. *State v. Dickinson,* 28 Ohio St.2d 65, 275 N.E.2d 599 (1971), states that "natural" means " 'existing or present from birth.' " The homicide by vehicle provisions of the Motor Vehicle Code do not readily fit with the other provisions of that Code. *See State v. Barela,* 95 N.M. 349, 622 P.2d 254 (Ct.App.1980). The definition of "person" includes artificial entities. *See State v. Brown,* 378 So.2d 916 (La.1979). The Motor Vehicle Code provides no assistance in determining the meaning of "human being" in § 66–8–101, *supra.*

The killing of a human being for which § 66–8–101, *supra,* provides a punishment is "homicide" by vehicle. The killing of a fetus, under the common law, was not homicide unless the fetus had been born alive; until born alive there was no human

being. *Keeler v. Superior Court of Amador County*, 2 Cal.3d 619, 87 Cal.Rptr. 481, 470 P.2d 617 (1970); *People v. Greer*, 79 Ill.2d 103, 37 Ill.Dec. 313, 402 N.E.2d 203 (1980); Means, *The Phoenix of Abortional Freedom: Etc.*, 17 N.Y.L.F. 335 (1971).

The common law of crimes applies except where the common law has been changed by statute. *Territory v. Montoya*, 17 N.M. 122, 125 P. 622 (1912). *See* § 30–1–3, N.M. S.A.1978. This Court may not change the common-law meaning of human being, such a change is a legislative matter because it is the Legislature that defines crimes. *State v. Allen*, 77 N.M. 433, 423 P.2d 867 (1967). Although there may be a tort recovery for killing a viable fetus, *Salazar v. St. Vincent Hospital*, 95 N.M. 150, 619 P.2d 826 (Ct.App. 1980), such a killing is not a criminal offense unless authority is found in legislation. This Court cannot establish a new offense. *See People v. Greer, supra; State v. Brown, supra*.

Inasmuch as the Motor Vehicle Code shows no legislative intent to change the common-law definition of human being, we look to the Criminal Code and the legislative history of that Code.

New Mexico departed from the common law when, by Laws 1853–54, art. 28, ch. III, § 10, it provided:

Sec. 10. The willful killing of an unborn infant child, by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be deemed murder in the third degree.

Defendant points out that this legislative treatment of the killing of an unborn infant child as murder was only a third degree felony. "Where the killing was of a 'human being', the otherwise identical facts could support a first degree murder conviction." Defendant is asserting that the Legislature distinguished between the killing of a human being and the killing of an unborn infant child, and this distinction applies between a human being and a viable fetus. This argument overlooks how the killing of a human being was defined; Section 1 of the above-cited 1853–54 legislation defined the killing of a human being as murder.

Defining the killing of a human being as first degree murder and defining the killing of an unborn infant child as third degree murder does not show a legislative intent that an unborn infant child was not to be considered a human being. Both of these "murder" provisions were included in a chapter of legislation dealing with offenses against "Lives and Persons." *See Salazar v. St. Vincent Hospital, supra*.

Defendant asserts: "In 1907, the term murder was removed from the statute proscribing the destruction of a viable fetus, although the crime remained a felony." This is incorrect. Laws 1907, ch. 36, § 5 is substantially identical to the above-quoted 1853–54 law, except the crime was raised to "murder in the second degree."

The question of legislative intent in this case differs from the legislative intent question in *Salazar v. St. Vincent Hospital, supra*. In *Salazar* we were concerned with the meaning of "person" in the 1882 wrongful death statute; the 1853–54 statute dealing with offenses against lives and persons indicated a legislative understanding that a viable fetus was a person. Here we are concerned with the meaning of "human being". *See State v. Brown, supra*.

The 1853–54 statute is ambiguous; although the statutes defined the killing of a human being as murder and defined the killing of an unborn infant child as murder, there was no general definition of murder. Thus an ambiguity existed as to whether "human being" included "unborn infant child". This ambiguity continued until 1891.

The approach, that the killing of an unborn infant child was murder, begun in 1853–54, continued in the 1907 law, and was not changed until repealed by Laws 1963, ch. 303, § 30–1.

The approach, that the killing of a human being was murder, begun in 1853–54, was continued in C.L. 1865, ch. LI, § 1, C.L. 1884, § 687, and a similar 1887 law, Laws 1887, ch. XXIX, § 1. A change occurred in 1891. Laws 1891, ch. 80, § 1, added a general definition of murder—murder was the unlawful killing of a human being. This

general definition continued in effect, *see* § 40–24–1, N.M.S.A. 1953 Comp. (Orig. Vol. 6), until repealed by Laws 1963, ch. 303, § 30–1.

Thus, immediately prior to enactment of the Criminal Code by Laws 1963, ch. 303, *see* § 30–1–1, N.M.S.A.1978, the Legislature defined the killing of an unborn infant child as murder (Laws 1907, ch. 36, § 5) and defined murder as the killing of a human being (Laws 1891, ch. 80, § 1). The relationship of these two statutes is the State's strongest argument that the Legislature intended the killing of an unborn infant child to be the killing of a human being. We need not rule on the legislative intent shown by these two laws; both were repealed upon enactment of the Criminal Code.

An aid in determining legislative intent in enacting the Criminal Code is the Committee Report (Report of Criminal Law Study Interim Committee, 1961–62). The Criminal Code, consistent with the Committee Report, continued to define murder as the killing of a human being. *See* § 30–2–1, N.M.S.A.1978 (1982 Cum.Supp.). The Committee Report recommended changes "where the existing law is unclear, unnecessary, a duplication or outmoded." The structure of the Committee Report was: "The recommendations of the committee appear on the left-hand side of this report. To the right of each section appears the present statutes which are being repealed * * *." The Committee recommended that the statute defining the killing of an unborn infant child as murder be repealed; its replacement was the criminal abortion statute. This recommendation was followed by the Legislature, *see* Laws 1963, ch. 303, § 5–1, compiled as § 40A–5–1, N.M.S.A. 1953 Comp. (Repl.Vol. 6). This criminal abortion statute was changed to an even less restrictive provision by Laws 1969, ch. 67, § 3, compiled as § 30–5–3, N.M.S.A. 1978.

The State contends that these criminal abortion statutes authorize us to hold that the killing of a viable fetus is the killing of a human being. This is incorrect. Neither the abortion statute which replaced the provision that the killing of the fetus was murder, § 40A–5–1 of the 1953 Compilation, nor its amended version, § 30–5–3, *supra,* defines murder, homicide or feticide; rather, these statutes were concerned with the special circumstances required for abortion to be a criminal offense. The contents of the abortion statutes show no legislative intent as to the meaning of "homicide" or "human being", and the legislative history negates such an intent.

There being no statutory provision showing a legislative intent to include a viable fetus within the meaning of "human being" for the purposes of the criminal law, the common-law meaning of "human being" applies. The trial court properly dismissed the charge.