NAKAMURA, Justice (dissenting). {62} Shooting at or from a motor vehicle, a violation of NMSA 1978, Section 30-3-8(B) (1993), is a collateral felony and may serve as a predicate felony for felony murder. Defendant’s felony-murder conviction should be affirmed. Because I disagree with the central holding of the majority’s opinion, I do not join or offer any comments as to the other conclusions reached by the majority opinion. {63} The majority opinion reaches the conclusion that shooting at or from a motor vehicle is not a collateral felony by departing from settled law without justification. Consequently, greater confusion in an already difficult area of law is likely. But the true source of the confusion in this area of law lies with our felony-murder statute itself. This Court’s attempts to make clear and precise that which is vague and inexact have not and are unlikely to provide the type of succinct guidance our bench and bar require as to the applicability of our felony-murder rule. As a majority of other states have done, our Legislature could elect to enumerate the felonies that may serve as predicate felonies and greatly help clarify this area of law. See John O’Herron, Felony Murder without a Felony Limitation: Predicate Felonies and Practical Concerns in the States, 46 No. 4 Crim. Law Bull., art. 4, 668 (2010) (“Thirty-five states have felony murder statutes that enumerate predicate felonies.”); see also State v. Willis, 1982-NMCA-151, ¶ 8, 98 N.M. 771, 652 P.2d 1222 (“The power to define crimes and to establish criminal penalties is a legislative function.”); cf. People v. Farley, 210 P.3d 361, 411 (Cal. 2009) (observing that the policy concerns animating the Legislature to enumerate a particular felony offense as a predicate felony for first-degree felony murder “remain within the Legislature’s domain,” and acknowledging the judiciary’s limited authority to narrow or modify the plain language of a validly enacted criminal statute). I. THIS COURT’S COLLATERAL-FELONY JURISPRUDENCE COMPELS THE CONCLUSION THAT SHOOTING AT OR FROM A MOTOR VEHICLE IS A COLLATERAL FELONY {64} New Mexico’s felony-murder statute prohibits the killing of one human being by another “in the commission of or attempt to commit any felony . . . .” NMSA 1978, § 30-2-1(A)(2) (1994) (emphasis added). Yet it is not true in New Mexico that “any felony” may serve as a predicate felony for felony murder. See generally State v. Yarborough, 1996-NMSC-068, ¶ 11, 122 N.M. 596, 930 P.2d 131 (observing that a strict reading of the “any felony” language ofSection 30-2-l(A)(2) is inappropriate, and stating that “[w]e look beyond the literal word of the statute to the common-law concept most likely intended by the legislature to be embodied in the statute”). Through the development of an elaborate body of case law, this Court has turned New Mexico’s “broad felony-murder statute into one of the most narrow felony-murder rules in the country.” O’Herron, supra, at 679. The collateral-felony rule is but one of the limitations we have placed on our felony-murder rule. The majority opinion seeks to clarify the purpose and application of this doctrine, but only makes matters more obscure. The contention that our collateral-felony rule derived from concern that the vast majority of second-degree murders might be improperly elevated to first-degree murders, Maj. Op. ¶ 15, does not correctly explain the origins of the collateral-felony rule. Additionally, the majority opinion’s explanation of the rule’s purpose is incomplete. See id. ¶ 17. {65} The collateral-felony rule “is more commonly referred to as the merger doctrine because the predicate felony and the homicide are said to merge.” State v. Campos, 1996-NMSC-043, ¶ 8 n.1, 122 N.M. 148, 921 P.2d 1266; see also Roary v. State, 867 A.2d 1095, 1103 (Md. 2005) (stating that the merger doctrine is also referred to as the collateral-felony doctrine); State v. Williams, 25 S.W.3d 101, 113 (Mo. Ct. App. 2000) (same). This Court elected not to use the phrase “merger doctrine,” however, but embraced the phrase “collateral-felony rule” instead to avoid any possible confusion that might arise from duplicative terminology usage. See, e.g., State v. Pierce, 1990-NMSC-049, ¶ 46, 110 N.M. 76, 792 P.2d 408 (observing that, in the double jeopardy context, “[tjhe rule of merger precludes an individual’s conviction and sentence for a crime that is a lesser included offense of a greater charge upon which defendant has also been convicted.”) (emphasis added). {66} The merger doctrine is not widely accepted, but has been adopted in jurisdictions, like New Mexico, where the Legislature has not expressly enumerated the felonies capable of supporting a felony-murder conviction. State v. Godsey, 60 S.W.3d 759, 774-75 (Tenn. 2001). The doctrine is a principle for discerning legislative intent. Id. at 774. It is a judicially-created mechanism for assessing whether the Legislature intended to permit a particular felony to serve as a predicate felony for felony murder. State v. Duffy, 1998-NMSC-014, ¶ 23, 126 N.M. 132, 967 P.2d 807, overruled on other grounds by State v. Tollardo, 2012-NMSC-008, 275 P.3d 110. The doctrine’s purpose becomes clearer still when the function of the doctrine in application is considered. {67} The merger doctrine prevents “the felony-murder rule from being improperly expanded to encompass nearly all killings, rather than just killings occurring in the course of an independent felony.” 1 Paul H. Robinson, Criminal Law Defenses § 103(a) at 496 (1984). The doctrine “restricts acceptable predicate felonies by treating certain felonies as inseparable from the homicides to which they give rise. The paradigm case is the killing that takes place in the course of an assault.” Claire Finkelstein, Merger and Felony Murder, in Defining Crimes: Essays on the Special Part of the Criminal Law, 219 (R.A. Duff & Stuart Green eds., 2005). Because the vast majority of homicides are predicated on an initial felonious assault, “every felonious assault ending in death automatically would be elevated to murder in the event a felonious assault could serve as the predicate felony for purposes of the felony-murder doctrine.” People v. Hansen, 885 P.2d 1022, 1028 (Cal.1994), overruled by People v. Sarun Chun, 203 P.3d 425 (2009). Absent the merger limitation, two serious problems arise. First, “application of the felony-murder doctrine would allow for conviction of the defendant for murder without the prosecution having to prove the existence of malice.” Campos, 1996-NMSC-043, ¶ 10. Such a result is inconsistent with basic principles of Anglo-American criminal law. See generally People v. Aaron, 299 N.W.2d 304, 317 (Mich. 1980) (criticizing the felony-murder rule on grounds that it “completely ignores the concept of determination of guilt on the basis of individual misconduct . . . [and] erodes the relation between criminal liability and moral culpability.” (internal quotation marks and citations omitted)). Second, the felony-murder rule “would eliminate the mens-rea requirement for murder in most homicide cases and circumvent the legislative gradation system for classes of homicides.” Campos, 1996-NMSC-043, ¶ 10. It is fair to infer that no Legislature would intend its own criminal penalty scheme to be circumvented, and avoiding this outcome is one of the primary policy rationales cited to justify the existence and adoption of the merger doctrine. See generally Roary, 867 A.2d at 1103-05 (discussing the conceptual justifications underlying the merger doctrine). {68} While there is agreement about the underlying purposes of the merger doctrine, courts that have adopted it are divided on how it is to be applied. As one treatise notes, “[t]he difficulty arising from the merger doctrine lies in determining which underlying felonies should merge.” 1 Robinson, supra at 498. In Campos, we noted three distinct methods utilized in varying jurisdictions: the independent felonious purpose test; the same act test; and deference to legislative intent. 1996-NMSC-043, ¶¶ 11-14. We rejected all three approaches because “New Mexico has a distinct version of the felony-murder doctrine, which calls for a different formulation of the” merger doctrine. Id. ¶ 16. Our distinct form of felony murder is an outgrowth of this Court’s holding in State v. Ortega, 1991-NMSC-084, 112 N.M. 554, 817 P.2d 1196, abrogated on other grounds as recognized by Kersey v. Hatch, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. {69} This Court’s decision in Ortega was a significant turning point in our felony-murder jurisprudence. Ortega held that the prosecution must demonstrate “that the defendant intended to kill (or was knowingly heedless that death might result from his conduct)” to secure a felony-murder conviction. Id. ¶ 25. The significance of this determination, with respect to our continued adherence to the merger doctrine, has been largely overlooked. Requiring, as Ortega does, the prosecution to prove the defendant acted with the mens rea commensurate with second-degree murder to secure a felony-murder conviction remedied the central ills the merger doctrine (as traditionally conceived) was adopted to cure. After Ortega, there is no concern a defendant can be convicted of murder without the State proving malice. See Campos, 1996-NMSC-043, ¶ 17. And Ortega largely foreclosed the possibility that the felony-murder doctrine might frustrate our Legislature’s scheme of graduated penalties for the different classes of homicides. See Campos, 1996-NMSC-043, ¶ 17 (“Our felony-murder rule only serves to raise second-degree murder to first-degree murder when the murder is committed in the course of a dangerous felony.”). Having significantly restricted the sweep of our felony-murder rule in Ortega, this Court in Campos realized that the merger doctrine served only a limited function after Ortega. The Campos Court explained that “the appropriate limitation imposed by the collateral-felony doctrine [i.e., the merger doctrine] in New Mexico is simply that the predicate felony cannot be a lesser included offense of second-degree murder.” 1996-NMSC-043, ¶ 19 (emphasis added). {70} To determine if a particular predicate felony is a lesser-included offense of second-degree murder, we apply the strict-elements test. Id. ¶ 22. We did not select this test arbitrarily; rather, we embraced the strict-elements test because we determined that it is a reliable tool “for inferring whether the legislature intended to authorize separate application of each criminal statute.” Id. ¶ 20 (internal quotation marks and citation omitted). In addition, the strict-elements test is most sensible in the wake of Ortega because the felony-murder doctrine applies only where the state can “prove the elements of second degree murder as well as an independent felony.” State v. Varela, 1999-NMSC-045, ¶ 20, 128 N.M. 454, 993 P.2d 1280; see also State v. McGruder, 1997-NMSC-023, ¶ 16, 123 N.M. 302, 940 P.2d 150 (concluding that the strict-elements test is the appropriate analytical tool to determine whether a particular felony may serve as a collateral felony), abrogated on other grounds by State v. Chavez, 2009-NMSC-035, 146 N.M. 434, 211 P.3d 891. We have expressly rejected invitations to utilize other means to discern legislative intent in this area. Varela, 1999-NMSC-045, ¶ 19. {71} Under the strict-elements test, an offense is “a lesser-included offense of another only if the statutory elements of the lesser offense are a sub-set of the statutory elements of the greater offense such that it would be impossible ever to commit the greater offense without also committing the lesser offense.” Campos, 1996-NMSC-043, ¶ 20 (internal quotation marks and citation omitted). A slightly clearer articulation of the strict-elements test appears in Duffy, 1998-NMSC-014, ¶ 24. In Duffy, we explained that, under the strict elements test, an offense is deemed to be a lesser-included offense of another only if all of the statutory elements of the lesser offense are completely embodied within the statutory elements of the greater offense such that it would be impossible ever to commit the greater offense without also committing the lesser offense. Id. (internal quotation marks and citation omitted). When applying the strict-elements test, we do not consider the facts of a particular case but look to the elements of the offense in the abstract. Varela, 1999-NMSC-045, ¶ 17. {72} The majority opinion complicates matters by stating that the collateral-felony rule requires that the predicate felony be independent of the homicide and then by noting that this Court has held that the predicate felony cannot be a lesser-included offense of second-degree murder. Maj. Op. ¶ 14. This suggests that there is some analytical distinction between these two propositions. But there is not. This Court has already made clear that a collateral felony is just an offense that is not a lesser-included offense of second-degree murder. Campos, 1996-NMSC-043, ¶19. {73} In Varela, we considered whether shooting at a dwelling in violation of Section 3 0-3-8(A) is a collateral felony. 1999-NMSC-045, ¶¶ 15-21. We observed that “[t]he crime of shooting at a dwelling requires willfully shooting at a dwelling, which is not an element of second degree murder.” Id. ¶ 18. Accordingly, we concluded that “shooting at a dwelling is not a lesser included offense of second degree murder.” Id. This straight-forward analysis applies with equal force to Section 30-3-8(B) and these principles have a clear and easy application in this case. {74} “Shooting at or from a motor vehicle consists of willfully discharging a firearm at or from a motor vehicle with reckless disregard for the person of another.” Section 30-3-8(B). Just as shooting at a dwelling is not an element of second-degree murder, Varela, 1999-NMSC-045, ¶ 18, shooting at or from a motor vehicle is also not an element of second-degree murder. See NMSA 1978, § 30-2-1 (B). Accordingly, Section 30-3-8(B) is a collateral felony and may serve as a predicate felony for felony murder. This conclusion is supported by our collateral-felony case law. See Campos v. Bravo, 2007-NMSC-021, ¶ 15, 141 N.M. 801, 161 P.3d 846 (concluding that aggravated burglary is a collateral felony because two elements of the offense — (1) the unauthorized entry of a structure, and (2) the intent to commit a felony therein — are not elements of second-degree murder); Duffy, 1998-NMSC-014, ¶ 25 (concluding that robbery is a collateral felony because the elements of the offense — theft of anything of value from the person of another by use or threatened use of violence — are not elements of second-degree murder); Campos, 1996-NMSC-043, ¶25 (concluding that first-degree criminal sexual penetration is a collateral felony because the elements of the offense — some form of penetration of the genital or anal openings of another — are not elements of second-degree murder). II. THE MAJORITY OPINION DEPARTS FROM SETTLED LAW WITHOUT JUSTIFICATION AND ADOPTS AN UNWORKABLE STANDARD FOR OUR COLLATERAL-FELONY RULE {75} The majority opinion abandons our previous approach to the collateral-felony rule and states that “a dangerous felony may only serve as a predicate to felony murder when the elements of any form of the predicate felony — looked at in the abstract — require a felonious purpose independent from the purpose of endangering the physical health of the victim.” Maj. Op. ¶ 24. The majority opinion clarifies that “there must be a felonious purpose that is independent from the purpose of endangering the physical health of the victim before the dangerous felony can be used to elevate a second-degree murder to first-degree murder.” Id. Upon what grounds does the majority opinion base this new development in our collateral-felony jurisprudence? The majority opinion explains that “[f]or purposes of the collateral-felony rule, legislative intent is better reflected in an assessment of felonious purpose. When a crime’s objective is to injure or kill, the crime cannot be said to be independent of a murder committed during the course of that crime.” Id. ¶ 19. But this is entirely inconsistent with Campos where this Court determined that the strict elements test most accurately reflects legislative intent for purposes of determining whether a felony is collateral. Why the majority adopts this new formulation and abandons our existing collateral-felony jurisprudence is unclear. No reason is expressly stated or readily discernible. See Trujillo v. City of Albuquerque, 1998-NMSC-031, ¶ 33, 125 N.M. 721, 965 P.2d 305 (stating that the principle of stare decisis does not require this Court to always follow precedent nor preclude us from overruling precedent, but it does require that we provide justification when we depart from precedent). {76} Whether or how the majority opinion’s new approach remains tethered to the underlying purpose of the merger doctrine — to determine legislative intent and further that intent — is also unclear. The majority opinion’s new formulation of our collateral-felony rule utilizes terminology associated with and rooted in the independent felonious purpose test. Under this test, courts focus on the defendant’s underlying purpose and hold that the predicate felony and homicide merge unless the predicate felony was committed with an independent felonious purpose from the killing. See Finkelstein, supra at 223; see also People v. Burton, 491 P.2d 793, 801 (Cal. 1971) (“[Tjhere is a very significant difference between deaths resulting from assaults with a deadly weapon, where the purpose of the conduct was the very assault which resulted in death, and deaths resulting from conduct for an independent felonious purpose, such as robbery or rape . . . .”), disapproved of on other grounds by People v. Lessie, 223 P.3d 3 (2010). This Court expressly rejected the independent felonious purpose test in Campos because the test was developed in jurisdictions where accidental homicides can result in felony murder charges, and the test necessarily permits such charges in its application. We thus deemed the test incompatible with our unique approach to felonymurder. Campos, 1996-NMSC-043, ¶¶ 15, 18 (rejecting the independent felonious purpose test, and other related tests, because an accidental killing cannot constitute second degree murder and, therefore, would not implicate New Mexico’s unique felony murder statute). Even ignoring this fact, commentators have persuasively shown that the independent felonious purpose test is analytically unsound. See Finkelstein, supra at 224 (“The independent felonious purpose test is not even compelling as applied to assault. A defendant who intends to harm his victim by beating him up very likely does not have the purpose of inflicting sufficient harm on him to kill him. And if this is so, then how can this test maintain that the felonious purpose in this case — which involves wounding — is not independent of the homicide ... {77} If the majority opinion’s intention is to rectify the confusion our collateral-felony rule has generated, see Maj. Op. ¶¶ 1, 14, it is doubtful that the adoption of a body of law we previously rejected as incompatible with our unique felony-murder jurisprudence is likely to achieve this end. And if any doubt exists that the majority opinion’s new approach to the collateral-felony rule is likely to cast our felony-murder jurisprudence into disarray, we need look no further than our existing precedent to dispel that doubt. {78} The majority opinion attempts to illustrate how its new approach to the collateral-felony rule functions by examining several felony offenses we have previously determined to be collateral. Maj. Op. ¶¶ 21-23. In Campos, this Court concluded that first-degree criminal sexual penetration (CSP), NMSA 1978, § 30-9-11 (2009), is a collateral offense and, thus, may serve as a predicate felony for felony murder. Campos, 1996-NMSC-043, ¶ 25. The majority opinion’s new approach leads to the conclusion that CSP is not collateral and cannot serve as a predicate offense, despite the majority opinion’s assertion to the contrary. {79} While the majority opinion claims that unauthorized carnal knowledge or the imposition of sexual activity upon those who are not willing participants in sexual activity are the purportedly independent felonious purposes of CSP, Maj. Op. ¶ 20, this analysis is doubtful at best. To suggest that unauthorized carnal knowledge or the imposition of unwanted sexual activity upon another is not somehow inextricably associated with an intent to injure another does not withstand scrutiny. Such conduct is undoubtedly injurious and can only be carried out with an intent to harm. The majority opinion perhaps recognizes this and states that CSP is a collateral offense because it is possible to commit second-degree murder without committing some form of CSP. Id. ¶ 21. But this is the traditional collateral-felony analysis (i.e., the strict-elements test) which the majority opinion abandons. The majority opinion’s new approach to our collateral-felony doctrine is unworkable and likely to only further confuse this already difficult area of law. III. CONCLUSION {80} A violation of Section 30-3-8(B) is a collateral felony and may serve as a predicate felony for felony murder. The majority opinion avoids this conclusion by fundamentally altering our collateral-felony jurisprudence. Confusion and uncertainty are the likely outcomes of the majority’s opinion. As this dissent lacks the force of law, clarity in this area of law must come from our Legislature. Enumerating the felonies that may serve as predicate felonies for felony murder will clarify matters greatly. {81} For the forgoing reasons, I respectfully dissent. JUDITH K. NAKAMURA, Justice